[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-Appellant Roberta Zorn appeals her conviction on one count of engaging in a pattern of corrupt activity in violation of R.C. § 2923.32(A)(1), advancing four assignments of error. First, Zorn claims the evidence produced at trial is insufficient to support the jury's verdict. Next, she assigns error to the trial judge's denial of her Crim.R. 29 motion for acquittal. Third, Zorn contends that her conviction was improper inasmuch as it rests completely on the testimony of one co-conspirator. Finally, Zorn argues her conviction was against the manifest weight of the evidence.
Zorn's conviction stems from her involvement in a drug trafficking enterprise operated in Miami County, Ohio, by Carl Faehl. Investigation of Faehl's enterprise began after a joint investigation of other individuals by the Miami County Sheriff's Office and the federal Drug Enforcement Agency uncovered information implicating Faehl in drug trafficking. Deputy Sheriff Paul Reece of the Miami County Sheriff's Office was the lead investigator in the case. By interviewing several of the individuals involved in the enterprise who had agreed to become cooperating sources, Reece was able to ascertain the extent of Faehl's drug dealings. Although Faehl was involved in trafficking marijuana as well as cocaine, nothing in the record links Zorn to Faehl's marijuana business, and for that reason, we confine our recitation of the facts to that portion of his enterprise concerning the distribution of cocaine.
Faehl had access to several sources of supply for cocaine located as near to him as his own neighborhood and as far away as Florida. Faehl was the decision maker in the enterprise, and would generally contact his sources when he wanted to obtain more cocaine, after which the sources would procure the cocaine and deliver it to Faehl. Sometimes, couriers would receive money from Faehl, drive to Dayton to buy anywhere from one-quarter to one ounce of cocaine, and bring it back to Faehl. After taking delivery of the cocaine, Faehl used the weighing equipment at Tim Jolliff's house in Miami County to divide the cocaine into smaller packages. Faehl provided some of his friends with free cocaine, and sold the rest to numerous individuals.
On November 25, 1997, a joint indictment, covering the period of time from December, 1995, to October 20, 1997 (hereinafter "the indictment period"), was issued in the Common Pleas Court of Miami County, Ohio, for twelve of the individuals involved in Faehl's drug enterprise, including Zorn. All were charged with violating R.C. § 2923.32(A)(1) by engaging in a pattern of corrupt activity. Others involved in the drug trafficking ring were prosecuted in federal court.
At trial, the State contended Zorn was a supplier of cocaine for Faehl's operation. Angela Jolliff, ex-sister-in-law of Tim Jolliff, ex-girlfriend of Faehl, admitted drug addict, and cooperating source, testified that she dated Faehl from April to December of 1996. During that time, she witnessed approximately five drug transactions between Faehl and Zorn and each time Zorn sold one ounce of cocaine to Faehl. Although Angela Jolliff could not recall the exact dollar values of the transactions, she did remember the figure eleven hundred dollars being discussed. After the transactions were completed, Faehl would give Zorn a small amount of cocaine for her trouble, as was his practice with others of his suppliers.
Michael Parke testified that he purchased cocaine from Zorn on approximately twenty occasions during the indictment period. For the most part, those transactions involved one eighth of an ounce of cocaine for which Parke paid Zorn two hundred dollars, and were conducted at Zorn's house in Miami County in the city of Piqua, Ohio. Parke was arrested after selling some of the cocaine he bought from Zorn to a police informant.
Cooperating source Michael Courtright, a participant in the marijuana trafficking engaged in by Faehl's enterprise, testified that he went to Faehl's house in Piqua in the summer of 1996 to purchase cocaine and collect money for Courtright's next trip out of state to buy marijuana. Faehl was out of cocaine, but told Courtright he was waiting for someone to deliver some momentarily. Within a half an hour, Zorn arrived at Faehl's house. She and Faehl went into another room for a short time which was a common practice of Faehl's when conducting drug transactions. Afterwards, Faehl was able to sell Courtright the cocaine he desired.
Kim Trissell also testified and stated that on two occasions she saw Zorn purchase a gram of cocaine from Trissell's friend, Melissa Olds. The location of these transactions was not established.
Finally, Heather Redinbo testified that after Faehl's arrest, Zorn confided to her that she was Faehl's source of supply for cocaine, but that she had not been caught. Zorn told Redinbo that her transactions with Faehl involved a large quantity of drugs.
Following the jury's return of a guilty verdict, Zorn was sentenced to five years of imprisonment. She now brings this timely appeal advancing four assignments of error. Because Zorn's argument in her first and second assignments of error are duplicative, we will consider them together.
 I. The trial court erred in determining that the State proved eachand every element of the offense of engaging in a pattern ofcorrupt activity as charged against appellant Roberta Zorn.
 II.
The trial court erred in failing to grant Appellant Roberta Zorn's motion for acquittal pursuant to Ohio Criminal Rule 29.
In Zorn's first assignment of error, she contends her conviction was not supported by sufficient evidence inasmuch as the State failed to prove (1) the existence of an enterprise, (2) Zorn's association with the enterprise, (3) Zorn's commission of "an overt act in furtherance of the conspiracy," (4) the value of the contraband bought and/or sold by Zorn exceeded five hundred dollars, as is required by the corrupt activity statute, and (5) venue. Her second assignment of error contending the trial court erroneously overruled her Crim.R. 29 motion for acquittal essentially parrots the foregoing arguments. For the following reasons, we find Zorn's conviction is sufficiently supported by the evidence and the trial court did not err in denying her motion for acquittal.
As a prelude to our discussion, we observe that in considering a sufficiency of the evidence challenge, a reviewing court
 [E]xamine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Thus, the test for sufficiency of the evidence is one of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
Further, the statutory provisions relevant to the offense for which Zorn was convicted are as follows:
R.C. § 2923.32(A)(1)
 No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity
* * *.
R.C. § 2923.31
 (C) "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.
 (E) "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
 (I) "Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:
* * *
(2) Conduct constituting any of the following:
* * *
 (c) Any violation of section * * * 2925.03
[trafficking in drugs], * * * [or] 2925.05
[funding drug or marijuana trafficking] of the Revised Code, * * * when the * * * value of the contraband or other property illegally possessed, sold, or purchased in the violation [or combination of violations] exceeds five hundred dollars.
Zorn claims the State's evidence at trial failed to establish the existence of an enterprise because it was not demonstrated that (1) there was an ongoing organization with commonality of purpose or guiding mechanism to direct the organization, (2) there was a continuing unit with an ascertainable structure, and (3) there was an organizational structure separate and apart, or distinct, from the pattern of predicate acts. Zorn's argument implicitly urges us to adopt the requirements for finding an enterprise as they have developed under the federal RICO statute, citing United States v. Riccobene (C.A. 3, 1983), 709 F.2d 214, andUnited States v. Bledsoe (C.A. 8, 1982), 674 F.2d 647. Both of those cases relied on United States v. Turkette (1989),452 U.S. 576, 583, in which the United States Supreme Court described the government's obligation to prove both the existence of an enterprise and a pattern of corrupt activity in RICO cases as follows:
 In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. (Cite omitted.) The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.
 The Tenth District Court of Appeals of Ohio has followed Riccobene in requiring the three federal elements of an enterprise to be proved for conviction. State v. Warren (Dec. 31, 1992), Franklin App. No. 92AP-604, unreported. The Court of Appeals in the Eighth District has also relied on federal interpretations of the RICO statute in holding the federal requirement that the structure of an enterprise be separate and apart from the predicate acts must be satisfied for the existence of an enterprise to be proven under the Ohio corrupt activity statute. U.S. Demolition Contracting, Inc. v. O'Rourke Constr. Co.
(1994), 94 Ohio App.3d 75, 84-85; Universal Coach, Inc. v. New York City Transit Auth., Inc.
(1993), 90 Ohio App.3d 284, 290-91. In so holding, the court noted that the Ohio statute was directly adopted from the federal RICO act.
Although the State concedes that a conviction under the Ohio corrupt activity statute requires proof on all three of the federal elements constituting an enterprise, Ohio courts have not wholeheartedly embraced that proposition. Our sister court in the Ninth District, for instance, has rejected the notion that an enterprise must possess the attributes described in the three federal elements. State v. Wilson (1996), 113 Ohio App.3d 737,742. The court has reasoned that the legislature's broad definition of "enterprise" in R.C. § 2923.31(C) "encompasses informal, unstructured associations and even a single individual," and is incompatible with a requirement that formal structure, continuous existence, or existence separate from the criminal activity in which it engages be shown. State v. Habash (Jan. 31, 1996), Summit App. No. 17073, unreported.
This court, along with the Fifth District Court of Appeals, has resolved cases questioning the existence of an enterprise under the corrupt activity statute without reference to the federal requirements. State v. McDade (Nov. 20, 1991) Miami App. No. 90 CA 46, unreported; State v. Kinsey (Nov. 30, 1995), Holmes App. No. CA-515, unreported. Instead, we applied the facts before us to the statutory definition of "enterprise" found in R.C. § 2923.31(C) without resort to the federal elements and found that the existence of an enterprise was proved.
We note that even in the federal circuit courts, there is no unanimity as to whether the enterprise must have an existence distinct from the corrupt activity. Compare Riccobene, supra
(stating enterprise must have existence separate and apart from criminal activity); United States v. Griffin (C.A. 4, 1981),660 F.2d 996, 999 (noting that a wholly illegal entity would seem to have a discrete existence in only two dimensions; the purpose of the association and the composition of the group, and that proof of both establishes the entity's separate existence); UnitedStates v. Masters (C.A. 7, 1991), 924 F.2d 1362, 1367 (stating two elements of "enterprise" and "pattern" would collapse into one without a requirement that the they be separate and apart);Bledsoe, supra (holding enterprise must exist separate and apart from racketeering activity); Chang v. Chen (C.A. 9, 1996),80 F.3d 1293, 1298 (adopting interpretation of the RICO statute that requires organization to be an entity separate and apart from racketeering activity); United States v. Sanders (C.A. 10, 1991)928 F.2d 940, 944 (using Riccobene elements to determine existence of enterprise) with United States v. Mazzei (C.A. 2, 1983),700 F.2d 85, 89-90 (stating it does not make sense to impose a "distinctness" requirement in RICO cases); United States v.Diecidue (C.A. 5, 1979), 603 F.2d 535, 545 (rejecting contention that enterprise must be "an identifiable group with finite goals and an existence separable form the pattern of racketeering activity to which some or all of its members ultimately resort");United States v. Qaoud (C.A. 6, 1985), 777 F.2d 1105, 1115-16
(rejecting notion that a RICO conviction requires proof that the enterprise and pattern of criminal activity are distinct); andUnited States v. Cagnina (C.A. 11, 1983), 697 F.2d 915, 921
(citing Turkette as suggesting an enterprise need not have a distinct formalized structure and that proof of "enterprise" and "pattern of racketeering activity" may coalesce).
We need not resolve the dissonance between those courts that require the enterprise to exist separate and apart from the corrupt activity and those that do not because we find ample evidence in the record of the existence of an organizational structure beyond what was required for the participants to sell drugs. That the proof of the enterprise and the proof of the pattern of corrupt activity substantially overlap does not preclude a finding that Faehl's enterprise was separate and apart from the pattern of corrupt activity engaged in by Zorn. The Supreme Court recognized as much in Turkette, supra.
Here, the record is replete with evidence of a fairly extensive drug trafficking operation headed by Carl Faehl. The organization purchased marijuana and cocaine, provided or arranged for its shipment to Ohio, repackaged it for sale, distributed it to various dealers, collected money from the dealers, and repeated the cycle with frequency over a lengthy period of time for the purpose of financial profit. The individuals involved in the drug trafficking were identified and their roles in the organization were established. Furthermore, Angela Jolliff and Michael Courtright both testified that Carl Faehl was the decision maker of the enterprise. He orchestrated procurement of the drugs by directing those below him in the organizational hierarchy to travel to his supplier, exchange money for drugs, and transport the drugs back to Miami County where he distributed them to his dealers. From this evidence we conclude that the jury's finding that an enterprise existed was supported by sufficient evidence.
Zorn also claims the State failed to prove she was associated with Faehl's enterprise. Her argument rests in part on the credibility of the State's witnesses, which is misplaced in a sufficiency of the evidence challenge and is instead addressed under her fourth assignment of error, infra, in which she claims her conviction was against the manifest weight of the evidence. Zorn summarizes the testimony of several witnesses, namely Angela Jolliff, Mike Courtright, and Mark Poling, who recalled observing little if any interaction between Zorn and other members of the enterprise. In addition, she argues that Detective Reece was unable to link Zorn to the enterprise's corrupt activity. Finally, she notes that Carl Faehl himself told Reece that Zorn was never involved in the drug ring.
Zorn mischaracterizes some of the witnesses' testimony. For example, Angela Jolliff testifed that she witnessed five drug transactions between Zorn and Faehl. Each time, Zorn sold one ounce of cocaine to Faehl. In addition, Mike Courtright stated that when he went to Faehl's house to purchase a small amount of cocaine from Faehl, the transaction could not be completed because Faehl was out of the drug. Faehl assured Courtright that his source was expected momentarily, so Courtright waited. Within a half an hour, Zorn arrived, spent a few minutes with Faehl in private, and left. Faehl then sold Courtright the cocaine he desired.
Zorn also ignores testimony offered by other witnesses that is arguably more incriminating than that offered by Jolliff and Courtright. First, Michael Parke testified that he purchased cocaine from Zorn on about twenty occasions, and that he was arrested after selling some of it to an informant. Kim Trissell twice saw Zorn buy one gram quantities of cocaine from Melissa Olds, who was a courier for Faehl's drug operation. Finally, Heather Redinbo recalled Zorn's admission to her that Zorn was Faehl's large scale cocaine supplier. While Carl Faehl did indeed deny Zorn was involved in the drug ring, when the evidence is viewed in a light most favorable to the State, we find a rational trier of fact could easily find beyond a reasonable doubt that Zorn was associated with Faehl's criminal enterprise.
Next, Zorn claims the State failed to prove she committed "an overt act in furtherance of the conspiracy." This language appears nowhere in the corrupt activity statute. The burden placed on the State was that it prove Zorn engaged in two or more incidents of corrupt activity. Based on the evidence just discussed, we conclude that the jury's finding that Zorn did so is supported by sufficient evidence.
Zorn also contends the State's evidence did not prove that the value of the drugs she bought or sold exceeded five hundred dollars. Michael Parke, however, testified that of the twenty times he purchased cocaine from Zorn, most of them involved one-eighth of an ounce of cocaine, which he purchased for $200. By extrapolation, it can be seen that even if only half of Parke's twenty transactions with Zorn were for the amount described, the value of the cocaine in those drug sales combined amounted to $2,000. Mark Poling testified that he routinely purchased one eighth of an ounce of cocaine from Faehl for $225, which would place the value of an ounce of the drug at $1,800. In addition, Michael Courtright's testimony placed the value of an ounce of cocaine at between $1,200 to $1,400. Although neither Poling's nor Courtright's testimony reflect any drug sales between them and Zorn, it does provide a basis for determining a value of the cocaine sold by Zorn. Finally, Detective Reece testified that one kilogram of cocaine is valued at $18,000 to $22,000 from which it can be extrapolated that an ounce of cocaine is valued at $511 to $625. While we suspect that estimate to be very low, it nevertheless establishes that each of Zorn's five drug sales to Faehl met the statutory criteria that a drug sale involve contraband valued in excess of $500 before it constitutes a predicate act for corrupt activity purposes. The evidence produced at trial, therefore, fully supports the jury's finding that the value of the contraband transacted by Zorn exceeded $500.
Finally, Zorn claims the State never established that Zorn's drug sales or purchases took place in Miami County, Ohio. The Ohio Supreme Court has recognized that although venue is not a material element of an offense charged, it must nevertheless be proved by the prosecution. State v. Draggo (1981), 65 Ohio St.2d 88,90. Venue need not be proved in express terms, however, so long as it is established by all the facts and circumstances in the case. State v. Dickerson (1907), 77 Ohio St. 34, paragraph one of the syllabus.
Venue in Ohio is established by R.C. § 2901.12, which in relevant part states as follows:
 (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation of the evidence that may be used to establish such course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
* * *
 (2) The offenses were committed by the offender in his same employment, or capacity, or relationship to another.
 (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
In construing the foregoing statutory provisions Ohio courts have held that "a prosecution for engaging in a pattern of corrupt activity in violation of R.C. § 2923.32(A)(1) is properly venued in any county in which a portion of the corrupt activity occurred or in which an organization formed for the purpose of engaging in corrupt activity is based." State v. Haddix (1994), 93 Ohio App.3d 470,479, citing State v. Giffin (1991), 62 Ohio App.3d 396,401-2; State v. Woods (Sept. 5, 1997), Hamilton App. No. C-950954, unreported; State v. Miller (Nov. 15, 1996), Montgomery App. No. 15481, unreported; State v. Sandoval (Mar. 13, 1996), Lorain App. No. 95CA006150, unreported; State v. Royce (Dec. 27, 1993), Madison App. Nos. CA92-09-023, CA92-09-024, CA92-09-025, CA92-09-026, unreported; and State v. Pennington (Oct. 18, 1993), Preble App. No. CA93-03-006, unreported.
In the present case, Faehl and Zorn were neighbors in Piqua, Ohio. Zorn's co-defendant Kevin Kirk also resided in Piqua at a time when he was regularly receiving packages containing cocaine from Florida which was subsequently sold to Faehl as did Melissa Olds when she sold cocaine to Zorn. In addition, Michael Courtright transported large amounts of marijuana to his home in Troy, then stored the marijuana on his property until it was distributed via Faehl's organization. Piqua and Troy are both located in Miami County. Furthermore, Faehl used weighing equipment located at Tim Jolliff's house in Miami County to divide the marijuana and cocaine into smaller quantities for sale. The record reveals that the hub of Faehl's drug enterprise was in Miami County. Even if Zorn was not directly involved in the Miami County activities of the drug ring, venue there was proper because her predicate acts were part of a criminal course of conduct, committed in her same relationship with Faehl and his enterprise, and in furtherance of the same purpose or objective, to wit, profiting from drug trafficking. In addition, Faehl's drug enterprise was formed in Miami County for the purpose of engaging in drug trafficking, which is a corrupt activity under R.C. § 2923.31(I)(2). Thus, venue in Miami County was established pursuant to R.C. § 2901.12(H).
Having found no merit to any of Zorn's arguments in her first assignment of error, it is overruled. Her arguments in her second assignment of error, wherein she claims the trial court erred in denying her Crim.R. 29 motion for acquittal, duplicate those articulated in her first assignment of error. Before the trial court, and again here, her contention is that the motion should have been granted because the evidence did not establish the elements discussed above. Therefore, our resolution of Zorn's first assignment of error also resolves her second, which is accordingly overruled.
 III. The trial court erred in holding that the testimony of oneco-conspirator, Angela Jolliff, was sufficient to convict AppellantRoberta Zorn.
In her third assignment of error, Zorn claims her conviction violates R.C. § 2923.03(D), which, according to her, provides that one cannot be convicted of complicity solely on the testimony of an accomplice unsupported by other evidence. We note first that Zorn was not convicted of complicity, but rather engaging in a pattern of corrupt activity. More importantly, while Zorn's recitation of the statute was once the law in Ohio, that all changed on September 17, 1986, when the statute was revised to read as follows:
 If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution. It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
As was noted by the Supreme Court of Ohio in State v. Evans
(1992), 63 Ohio St.3d 231, 240-41, "[t]he new version of the statute, effective September 17, 1986, eliminated the need for corroboration of an accomplice's testimony, but required the court to instruct the jury about its suspect credibility." See alsoState v. McDade (Nov. 29, 1991), Miami App. No. 90-CA-46, unreported (acknowledging that revised version of R.C. § 2923.03(D) no longer prohibits convictions for complicity based upon testimony of an accomplice).[1] We are, quite frankly, surprised at Zorn's counsel's citation of the outdated statute, and urge him to use caution, any measure of which would have avoided the present mistake, when citing authority to this court in the future.
Since Zorn's argument rests on law that has been obsolete since 1986, we overrule her third assignment of error.
 IV. Appellant Roberta Zorn's conviction must be reversed because it isagainst the manifest weight of the evidence.
In her fourth and final assignment of error, Zorn claims her conviction was against the manifest weight of the evidence. Before we address the merits of her argument, we note that in weight of the evidence challenges, an appellate court
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, supra, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. Although Thompkins permits a reviewing court to consider the credibility of witnesses when addressing a weight of the evidence challenge, we nevertheless accord substantial deference to a factfinder's decision as to which testimony to credit, and to what extent to do so. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. Bearing this in mind, we proceed to the merits of Zorn's assigned error.
Zorn first argues that no witnesses testified as to the value of the drugs Zorn sold to Faehl. Angela Jolliff testified that she saw Zorn sell a total of five ounces of cocaine to Faehl, and Michael Parke testified to purchasing one-eighth of an ounce of cocaine from Zorn on the better part of twenty occasions. In addition, and as we noted in our discussion of Zorn's first assignment of error, both Parke and Detective Reece provided testimony as to the dollar value of an ounce of cocaine, which was established to be in excess of $500, as is required for a conviction pursuant to the corrupt activity statute. R.C. § 2923.31(I)(2)(c). There is no indication that in deciding to credit those witnesses' testimony in the complete absence of any evidence to the contrary the jury "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." Thompkins, supra.
Next, Zorn claims there was no evidence that the transactions in which she engaged involved cocaine, since no one so testified nor was any laboratory analysis performed on the substance. She argues that none of the witnesses were able to definitively state that transactions between Zorn and other members of the enterprise involved cocaine. On the contrary, the record contains statements from Angela Jolliff, Michael Courtright, Kim Trissell, and Michael Parke identifying the substance involved in transactions in which Zorn participated as cocaine. Zorn never objected to the witnesses' identification of the substance or their qualifications to do so. Thus, we need not determine whether they possessed experience in drug use to such an extent that they qualified to be expert witnesses enabling them to testify on drug identification. See State v. Maupin (1975), 42 Ohio St.2d 473, 479. See alsoMcDade, supra.
We have weighed all the evidence in the record and considered the credibility of the witnesses while giving substantial deference to the jury's finding that Zorn engaged in trafficking cocaine on two or more occasions and that the value of the contraband involved was in excess of $500. There is no conflict in the evidence presented by the State regarding the nature or value of the substances Zorn sold to Faehl and Parke, and we are unable to conclude that the evidence weighs heavily against Zorn's conviction. Zorn's argument is, therefore, without merit.
Next, Zorn claims Angela Jolliff's testimony was not credible given her drug abuse and cooperation with the State allegedly in exchange for the State's promise not to prosecute her in connection with Faehl's drug enterprise. Jolliff, however, denied any deals were made with her in exchange for her testimony, as did Detective Reece. Furthermore, Reece stated that after receiving information from Jolliff, he investigated what she told him for purposes of verification and never found anything she said to be false. Moreover, Zorn's conviction did not rest on Jolliff's testimony alone, as is suggested by Zorn. Michael Parke, Kim Trissell, Heather Redinbo, and Michael Courtright all testified to Zorn's involvement with Faehl's organization. Thus, Zorn's argument is not well taken.
Finally, Zorn contends her conviction was against the manifest weight of the evidence because the evidence does not show that she committed an overt act in furtherance of the conspiracy. As we observed in our discussion of Zorn's first assignment of error, this language appears nowhere in the corrupt activity statute. Zorn appears to confuse the offense for which she was convicted, engaging in a pattern of corrupt activity, with conspiracy, for which she was neither convicted nor charged. Furthermore, requiring proof of an overt act, which Zorn correctly describes as "an open act, done outwardly, without attempt at concealment," State v. Papp (1980), 68 Ohio App.2d 21, paragraph one of the syllabus, would be ludicrous in the context of a drug ring, where we presume secrecy and concealment are concerns of the highest order for those involved. For these reasons, we find Zorn's argument unconvincing. Zorn's fourth assignment of error is overruled.
Having found no merit in any of Zorn's assignments of error, judgment of the trial court is affirmed.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
James D. Bennett
Todd D. Severt
Hon. Jeffrey M. Welbaum
[1] Zorn does not argue any error in the trial court's instructions to the jury.