The STATE of Ohio, Appellee,

v.

HADDIX, Appellant.

[Cite as *State v. Haddix* (1994), 93 Ohio App.3d 470.]

Court of Appeals of Ohio,
Preble County.

No. CA93–06–013.

Decided May 23, 1994.

*Rebecca Ferguson*, Preble County Prosecuting Attorney; and *Robert F. Smith*, Assistant Attorney General, for appellee.

*Richard J. Wessel* and *Fred Miller*, for appellant.

WALSH, Judge.

Defendant-appellant, Huel Haddix, appeals an order of the Preble County Court of Common Pleas denying his motion for a new trial.

On December 16, 1992, appellant was indicted by the Preble County Grand Jury on one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, the Ohio RICO ("Racketeer Influenced and Corrupt Organizations Act") (Count 1 of the indictment), and three counts of receiving stolen property in violation of R.C. 2913.51 (Counts 26, 27, and 30). The case was tried to a jury between May 10 and May 12, 1993, after which appellant was found guilty of all four counts. On May 18, 1993, appellant filed a motion for a new trial, which was denied by the trial court on June 21, 1993. Appellant now appeals, setting forth the following assignments of error:

Assignment of Error No. 1:

"The trial court erred to the prejudice of defendant-appellant when it permitted the state to cross-examine him from exhibits not produced in discovery and when it refused to declare a mistrial."

Assignment of Error No. 2:

"The trial court erred to the prejudice of defendant-appellant when it overruled his motion to dismiss and failed to properly instruct the jury regarding appellant's mental state."

Assignment of Error No. 3:

"The trial court erred to the prejudice of defendant-appellant when it refused to dismiss two counts of receiving stolen property because of improper venue."

Assignment of Error No. 4:

"The trial court erred to the prejudice of defendant-appellant when it overruled his motion for a new trial."

Assignment of Error No. 5:

"The trial court erred to the prejudice of defendant-appellant when it permitted evidence of like and similar acts as well as evidence regarding a pervasive crime problem to be presented to the jury."

In his first assignment of error, appellant argues that the trial court erred in permitting plaintiff-appellee, the state of Ohio, to cross-examine appellant from exhibits that the state had failed to disclose in discovery, and in subsequently refusing to declare a mistrial.

During the trial, appellant denied being involved in a pattern of corrupt activity or in receiving stolen property. By testifying, he placed his credibility in issue. On cross-examination, for impeachment purposes, appellant was questioned about false tax returns which inflated his income and which were submitted to a bank to secure a loan on his daughter's residence. The state admits it did not provide the tax returns to appellant despite a timely request for discovery. The state contends, however, that the introduction of the tax returns at trial was harmless, since the state used them to impeach appellant's testimony and credibility on cross-examination, and not as part of its case-in-chief.

Crim.R. 16(B)(1)(c) provides:

"Documents and tangible objects. Upon motion of the defendant the court shall order the prosecuting attorney to permit the defendant to inspect and copy or photograph books, papers, documents, photographs, tangible objects, buildings or places, or copies or portions thereof, available to or within the possession, custody or control of the state, and which are material to the preparation of his defense, or are intended for use by the prosecuting attorney as evidence at the trial, or were obtained from or belong to the defendant."

Crim.R. 16(B) imposes on the prosecutor a duty to disclose certain information upon a proper discovery request made by the defendant. The rule does not distinguish between whether documents are intended to be used by the prosecutor in its case-in-chief or in cross-examination. Accordingly, the state's failure to

disclose appellant's income tax returns despite appellant's proper discovery request violated Crim.R. 16(B)(1)(c).

Failure to comply with a discovery request for documents does not automatically result in the exclusion of the documents. Pursuant to Crim.R. 16(E)(3), when a party fails to provide discovery, the trial court may order the party to permit discovery or inspection, grant a continuance, prohibit the party from introducing into evidence the material not disclosed, or make any other order it deems just under the circumstances. The imposition of sanctions for discovery violations is within the discretion of the trial court. *State v. Harcourt* (1988), 46 Ohio App.3d 52, 54, 546 N.E.2d 214, 217–218. In the case at bar, the trial court ordered no sanctions and allowed the state to use the tax returns for cross-examination.

■ Assuming, *arguendo,* that the trial court's decision to allow the state to use the tax returns for cross-examination was an abuse of discretion, we find any error to be harmless beyond a reasonable doubt. "Error in the admission of evidence in criminal proceedings is harmless if there is no reasonable probability that the evidence may have contributed to the accused's conviction." *State v. Bayless* (1976), 48 Ohio St.2d 73, 2 O.O.3d 249, 357 N.E.2d 1035, paragraph seven of the syllabus, vacated as to death penalty (1978), 438 U.S. 911, 98 S.Ct. 3135, 57 L.Ed.2d 1155.

The tax returns, which were already known to appellant, inasmuch as he signed them, were not used as substantive evidence of the crimes with which appellant was charged, but to impeach his credibility on cross-examination. The evidence involved falsifying loan application materials wholly unrelated to the charged offenses. Further, there is other evidence in the record which also tends to discredit appellant.

During trial, the state presented the testimony of Robert Hanks, an undercover informant working with a Task Force set up by the Ohio Organized Crime Investigations Commission. Hanks testified as to several criminal transactions in stolen property in which appellant was involved. In particular, Hanks testified that on June 25, 1990, he delivered a stolen Suzuki ATV Quadrunner to appellant, who took possession of it. Dennis Olinger, an accomplice in the corrupt activity, similarly testified. Olinger's general testimony was that appellant would frequently act as a "fence," buying stolen goods at a cheap price and later reselling them at a profit. Olinger testified that on October 10, 1991, he brought three lawn tractors, which he had stolen earlier, to appellant who agreed to buy two of them. When appellant testified, he vehemently denied receiving the stolen Quadrunner from Hanks or the lawn tractors from Olinger. He further stated that these items were never delivered to him.

Appellant's denial of having ever received stolen goods directly conflicted with the testimony of Hanks and Olinger. The jury evidently believed Hanks and

Olinger and found appellant guilty. We cannot say that there is a reasonable probability that the disputed income tax returns contributed to appellant's conviction. Appellant's first assignment of error is overruled.

In his second assignment of error, appellant argues that the trial court erred in overruling his motion to dismiss and in failing to instruct the jury as to appellant's culpable mental state with regard to R.C. 2923.32. On January 7, 1993, appellant filed a motion to dismiss his corrupt activity charge, alleging that the statute failed to set forth a culpable mental state and thus an ascertainable standard of guilt. This motion was overruled by the trial court. At the end of the trial, the trial court instructed the jury as to the required culpable mental state for the predicate offenses of receiving stolen property. However, the trial court did not instruct the jury as to a culpable mental state with regard to the R.C. 2923.32 corrupt activity offense.

With the exception of R.C. 2923.32(A)(3), which sets forth a "knowingly" mental state, R.C. 2923.32 is silent as to what culpable mental state a defendant must possess in order to be convicted. R.C. 2901.21 provides that:

"(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

An analysis of the few cases that have addressed the issue reveals that there are arguably three possible rules. One rule is that recklessness is the required culpable mental state to commit the corrupt activity offense of R.C. 2923.32. This is the rule of R.C. 2901.21, as followed by the Second District Court of Appeals in *State v. Hughes* (Mar. 13, 1992), Miami App. No. 90–CA–54, unreported, 1992 WL 52473. That court held that, because R.C. 2923.32 neither specifies a degree of culpability nor plainly indicates a purpose to impose strict liability, R.C. 2901.21 mandates that recklessness be found in order to convict a defendant. This is also the position taken by appellant.

A second possible rule is that no culpable mental state is required, as R.C. 2923.32 plainly indicates a purpose to impose strict liability. This is the position taken by Judge Grady, concurring in *State v. Hughes*. Judge Grady argued that since the acts prohibited in RICO are *mala prohibita,* that is, acts that are made wrong by positive laws and prohibited as such, "omission * * * of an express prescription of criminal intent * * * in R.C. 2923.32 connotes a legislative purpose to create strict liability." He further stated that "[b]ecause [the acts] are in furtherance of other acts which are in themselves criminal, there is an ascertainable standard of guilt, notwithstanding the neutral character of the acts

prohibited. As strict liability crimes, no specific or express degree of culpability is required * * *."

A third possible rule is that the culpable mental state found in the statutory definition of the predicate offenses is the culpable mental state that must be proved to establish a RICO violation. This is the position taken by the state and the trial court in the case at bar. This is also the position this court took in *State v. Haddix* (1994), 92 Ohio App.3d 221, 634 N.E.2d 690, when it held that the failure of R.C. 2923.32 to specify a degree of *mens rea* over and above that required to prove the underlying predicate offense did not render the statute unconstitutional. In doing so, we based our reasoning upon another Ohio case, *State v. Thrower* (1989), 62 Ohio App.3d 359, 575 N.E.2d 863, which in turn had based its reasoning upon a line of cases in the United States Second Circuit Court of Appeals.

The Second Circuit noted that the federal RICO statute does not require a scienter element over and above that required in the predicate offenses. As a result, the Second Circuit concluded that it is necessary to look to the scienter elements found in the statutory definition of the predicate offense to determine the degree of culpability that must be proved to establish a RICO violation. *United States v. Biasucci* (C.A.2, 1986), 786 F.2d 504, certiorari denied (1986), 479 U.S. 827, 107 S.Ct. 104, 93 L.Ed.2d 54, citing *United States v. Scotto* (C.A.2, 1980), 641 F.2d 47, certiorari denied (1980), 452 U.S. 961, 101 S.Ct. 3109, 69 L.Ed.2d 971. See, also, *e.g.*, *United States v. Bagaric* (C.A.2, 1983), 706 F.2d 42, certiorari denied (1983), 464 U.S. 840, 104 S.Ct. 134, 78 L.Ed.2d 128; *United States v. Boylan* (C.A.2, 1980), 620 F.2d 359, certiorari denied (1980), 449 U.S. 833, 101 S.Ct. 103, 66 L.Ed.2d 38.

The Second Circuit rule was followed in other circuits as well. See, *e.g.*, *Genty v. Resolution Trust Corp.* (C.A.3, 1991), 937 F.2d 899; *United States v. Rone* (C.A.9, 1979), 598 F.2d 564, certiorari denied (1980), 445 U.S. 946, 100 S.Ct. 1345, 63 L.Ed.2d 780. See, also, *United States v. Pepe* (C.A.11, 1984), 747 F.2d 632; *United States v. Jannotti* (E.D.Pa.1980), 501 F.Supp. 1182. One court in the Eighth Circuit expressed, however, "grave doubts as to the propriety of the holdings in these [Second Circuit] cases." *United States v. Bledsoe* (C.A.8, 1982), 674 F.2d 647.

■ We have reviewed the foregoing Ohio cases and now find *Hughes* and *Thrower* to be unpersuasive. The "recklessness rule" of *Hughes* is based upon a strict reading of R.C. 2901.21. However, such an interpretation can require a degree of culpability the same or lower than that required for the predicate offenses.

RICO was created as a "device to prevent and reverse the draining of billions of dollars from America's economy by unlawful conduct." *United States v.*

*Bagaric* (C.A.2, 1983), 706 F.2d 42, 54. By requiring recklessness as the culpable mental state under R.C. 2901.21(B) simply because no mention is made in R.C. 2923.32(A)(1) and (2) of an intention to impose strict liability, we have not fully addressed the legislative intention. Each of the predicate offenses set out in R.C. 2923.31, the definitions section, has culpable mental state requirements from "recklessly" through "purposely."[1] It makes sense that given no culpable mental state under R.C. 2923.32(A)(1) and (A)(2), and given the varying culpable mental states possible under the predicate RICO offenses identified in R.C. 2923.31, the legislature intended strict liability under R.C. 2923.32(A)(1) and (A)(2) offenses. Thus, we reject the Second Circuit rule as followed by the Ninth District Court of Appeals in *Thrower*. In doing so, we overrule our decision in *State v. Haddix* (1994), 92 Ohio App.3d 221, 634 N.E.2d 690, with regard to the RICO culpable mental state.[2] We find that the Second Circuit rule makes sense only as long as all of the predicate offenses constituting the pattern of corrupt activity require the same culpable mental state. The rule, however, does not provide an answer when the corrupt activity is based upon several predicate offenses with differing culpable mental states.

This court now finds that R.C. 2923.32 plainly indicates a purpose to impose strict liability, with the exception of R.C. 2923.32(A)(3), which sets forth a "knowingly" mental state. "The more serious the consequences [of violating a statute] are to the public, the more likely the legislature meant to impose liability without fault." *State v. Buehler Food Markets* (1989), 50 Ohio App.3d 29, 30, 552 N.E.2d 680, 682. RICO was created to fight the draining of billions of dollars from the economy by unlawful conduct, such as the theft and fencing of property. Whether a defendant knowingly, recklessly or otherwise engages in a pattern of corrupt activity, the effect of his activities on the local and national economy is the same. Requiring the finding of a specific culpable mental state for a RICO violation obstructs the purpose of the statute and makes it difficult to comprehend and apply. We therefore hold that R.C. 2923.32(A)(1) and (2) allege strict liability offenses. The (A)(3) provision prescribes a "knowingly" requirement.

Accordingly, the trial court was not required to instruct the jury as to the culpable mental state with regard to the instant RICO charges and its failure to do so was not error. Appellant's second assignment of error is overruled.

---

1. R.C. 2923.31 sets out no predicate offenses with a negligent *mens rea* requirement.

2. We note that this ruling would not have changed the result in *Haddix I*. In that case, we found, *inter alia*, that R.C. 2923.32(A)(1) was not unconstitutional due to its failure to specify a specific degree of *mens rea*. Whether the appropriate *mens rea* is that of the underlying offense, as previously held, or strict liability, as we now hold, does not affect the underlying constitutionality of the statute.

In his third assignment of error, appellant argues that the trial court erred in finding venue in Preble County with regard to Counts 27 and 30 of the indictment.

On June 25, 1990, a 1990 Suzuki ATV Quadrunner was stolen from its owner's residence in Preble County by Rondle Swango and Ricky Webb, transported to Hanks' garage located in Preble County and then transported to appellant's residence in Butler County, where appellant took possession of the stolen Quadrunner. These events constituted the basis for Count 26 of the indictment.

On the evening of October 9, 1990, Olinger and Webb went to appellant's residence, where the three men talked about looking for a specific type of tractor. Later that evening, Olinger and Webb broke into two residences in Butler County, where they stole a John Deere 950 and two John Deere 112s, which they took to appellant's residence. Appellant agreed to buy the two John Deere 112s, but not the John Deere 950. The latter was later picked up by Hanks. These events constituted the basis for Count 27 of the indictment.

Finally, the events leading to Count 30 of the indictment are as follows: On November 12, 1990, Olinger, Webb and Swango broke into the Middletown Honda/Kawasaki store in Warren County, where they stole four new ATVs. They then transported the ATVs to a farm in Montgomery County. From there, they contacted appellant, who looked at the ATVs and agreed to buy all four.

R.C. 2901.12 governs venue in criminal prosecutions and provides:

"(C) When the offense involved the unlawful taking or receiving of property or the unlawful taking or enticing of another, the offender may be tried in any jurisdiction from which or into which the property or victim was taken, received, or enticed.

" * * *

"(H) *When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.* Without limitation on the evidence that may be used to establish such course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct;

"(1) The offenses involved the same victim, or victims of the same type or from the same group.

"(2) The offenses were committed by the offender in his same employment, or capacity, or relationship to another.

"(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

"(4) The offenses were committed in furtherance of the same conspiracy.

"(5) The offenses involved the same or a similar modus operandi.

"(6) The offenses were committed along the offender's line of travel in this state, regardless of his point of origin or destination." (Emphasis added.)

In *State v. Giffin* (1991), 62 Ohio App.3d 396, 401, 575 N.E.2d 887, 890–891, the court held that a prosecution for engaging in a pattern of corrupt activity in violation of R.C. 2923.32(A)(1) is properly venued in any county in which a portion of the corrupt activity occurred or in which an organization formed for the purpose of engaging in corrupt activity is based. There is substantial evidence that appellant's activities were in furtherance of a conspiracy to steal and resell farm equipment and ATVs at a profit. Venue in Preble County was proper, since part of the criminal conspiracy that appellant participated in occurred in Preble County. Appellant's third assignment of error is therefore overruled.

In his fourth assignment of error, appellant argues the trial court erred in overruling his May 18, 1993 motion for a new trial. Appellant contends that proof that the jury, during deliberations, improperly considered unproven violence on the part of the appellant and his family, entitles him to a new trial.

After the jury had returned with its guilty verdicts on the indictment, and while it was deliberating with regard to the issue of forfeiture, the trial court brought to the attention of the parties a note from the jury, which stated: "Can you keep the defendant's family and witnesses here until we exit the building? (We are concerned for our safety)." The court stated that the note, which was made part of the record, was handed to it by the bailiff when the bailiff told the court that the jury had reached verdicts. At the June 21, 1993 hearing on the motion for a new trial, the bailiff testified as follows:

"[by the bailiff, Robert E. Davis]

"*A.* They knocked on the door, when I opened the door, they told me they had just about reached a verdict and wanted to know if the Defendant and/or his family had to be present when they read the verdict and who read the verdict.

"I instructed them to write that on a piece of paper and I would give it to the Judge.

"* * * *

"*A.* No sir, there was several people discussing that on Wednesday, half the jury went to Frische's [*sic*], and by happenstance, the Haddix family also went to Frische's [*sic*], and there was some discussion about comments they overheard, but they did not relate anything to me.

"[by Richard J. Wessel, counsel for appellant]

"*Q.* When you were given that note, about protection from the Sheriff, was it your opinion then and there that the jury had a verdict?

"*A.* Yes.

" * * *

"*Q.* Mr. Davis, when is the very first time that you were aware that there was concern on the part of the jury about their protection? The very first time?

"*A.* Was real close to when they told me they had a verdict because they were concerned as to whether or not Mr. Haddix and his family had to be present when they returned the verdict.

" * * *

"*Q.* Did any member of the jury actually tell you what their verdict was?

"*A.* No sir."

The trial court overruled appellant's motion, finding that the jury had not revealed its verdicts prior to their announcement in open court, and that there had been no improper or unauthorized contact with the jury by anyone during the trial or the jury deliberations.

A new trial may be granted for the misconduct of a jury where the substantial rights of the defendant have been materially affected. Crim.R. 33(A); *State v. Hipkins* (1982), 69 Ohio St.2d 80, 83, 23 O.O.3d 123, 125, 430 N.E.2d 943, 945–946. Rulings on motions for new trial are within the sound discretion of the trial court and may not be disturbed on appeal absent a clear showing that the court abused its discretion. *State v. Taylor* (1991), 73 Ohio App.3d 827, 833, 598 N.E.2d 818, 821–822.

■ We find that the trial court did not abuse its discretion in overruling appellant's motion. The record shows that at no time prior to the delivery of the note to the bailiff did the jury or any juror indicate concern about safety. During the hearing, the trial court stated that shortly after it was given the note, it was told that the jury had reached verdicts. Because we find nothing in the record to demonstrate that the guilty verdicts were influenced by the jury's concern for its safety, the refusal of the trial court to grant a new trial will not be disturbed. Appellant's fourth assignment of error is overruled.

In his fifth and last assignment of error, appellant argues that the trial court erred in allowing evidence of like and similar acts and evidence with regard to a pervasive crime problem to be presented to the jury. Specifically, appellant contests the introduction into evidence of (1) various stolen items received by appellant for which he was not charged, (2) two tapes which secretly recorded two

conversations between appellant and Hanks, and which occurred after the stolen ATV Quadrunner was delivered to appellant,[3] and (3) the testimony of the Task Force Director, Steven Walker, about the purpose of the Task Force and its effect on criminal enterprises.

Because the first two items fall within the scope of Evid.R. 404(B), we will treat them together.

Evid.R. 404(B) provides:

"Other crimes, wrongs or acts. Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show that he acted in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Evidence of other acts of a defendant which are unrelated to the charges for which he is being tried is generally inadmissible. *State v. Thompson* (1981), 66 Ohio St.2d 496, 497, 20 O.O.3d 411, 411–412, 422 N.E.2d 855, 856. However, evidence of such other acts may be admissible if it tends to show any of the specific purposes contained in Evid.R. 404(B).

■ We find that evidence of appellant's receipt of several stolen items and tape-recorded conversations is admissible under Evid.R. 404(B), as it was used by the state to show appellant's guilty knowledge as well as appellant's scheme, plan or system in doing the underlying crimes with which he was charged. From the outset, appellant has denied being involved in fencing stolen property or receiving stolen property from Olinger or Swango. The trial court, therefore, did not err in allowing the foregoing evidence to be presented to the jury.

■ Appellant next complains about Walker's testimony and characterizes it as a "call to the community to rid the area of crime * * *." The pertinent portions of Walker's testimony are as follows:

"A. Here, what we wanted to do was take a [*sic*] in-depth look at all of these criminal enterprises and determine how broad this problem actually is.

" * * * *

"[by Robert Smith, counsel for the state]

"Q. Why would you wait two years to bring down indictments?

---

**3.** On the tapes, appellant discusses theft-related activity and insurance frauds. He also talks about his daughter's storing lawn mowers, engines and wet bikes stolen by Swango.

"*A.* Well in the situation that we're involved in here, as we've already talked about, we have eleven different criminal enterprises. We have criminal enterprises with tentacles reaching into several different states.

"We have recovered over three million dollars in stolen property. We have estimates of thirty million dollar criminal interruption. We have tentacles of these organizations reaching into foreign countries.

"Ultimately we were involved in nine court-ordered wire taps."

After reviewing the entire record, we find that appellant was not prejudiced by Walker's testimony. Unlike appellant, we do not view the testimony as being a call to the community to rid the area of crime. The testimony was limited in scope and clearly designed to establish that appellant was only a small part of the focus of the investigation. Further, it was invited by defense counsel's arguments. Indeed, in his opening argument and in his cross-examination of Hanks, defense counsel repeatedly asked why the Task Force had waited several years to file criminal charges and to execute search warrants. The trial court did not err in allowing Walker's testimony. Appellant's fifth assignment of error is overruled.

*Judgment affirmed.*

WILLIAM W. YOUNG, J., concurs.

KOEHLER, P.J., concurs in part and dissents in part.

KOEHLER, Presiding Judge, concurring in part and dissenting in part.

This court in *State v. Haddix* (1994), 92 Ohio App.3d 221, 634 N.E.2d 690, considered the issue of the constitutionality of R.C. 2923.32(A)(1), since it does not set forth a specific degree of mental culpability. In finding the statute meets constitutional muster, we held that the *mens rea* necessary to establish the offense of engaging in a pattern of corrupt activity was the same as that of the underlying predicate offenses with which a defendant is charged. We relied upon *State v. Thrower* (1989), 62 Ohio App.3d 359, 575 N.E.2d 863. The state argues this position in this cause. Here, the trial court did not instruct the jury as to the culpable mental state necessary with regard to the RICO charge.

R.C. 2901.21 provides in part:

"(B) When the section defining an offense does not specify any degree of culpability, and plainly indicates a purpose to impose strict criminal liability for the conduct described in such section, then culpability is not required for a person to be guilty of the offense. When the section neither specifies culpability nor plainly indicates a purpose to impose strict liability, recklessness is sufficient culpability to commit the offense."

This interpretation was followed by the majority of the Second District Court of Appeals in *Hughes, supra.* The court in *Hughes* concluded that since R.C. 2923.32 does not plainly indicate a purpose to impose strict liability, recklessness must be found to convict on a RICO violation. The majority herein in an innovative approach determines a legislative intent different from that adopted by the Second District in *Hughes.* Following Judge Grady's concurring opinion in *Hughes,* but on a different theory, the majority has determined that this court's opinion in *Haddix I* must be reversed.

The majority's rationale is not supported by persuasive authority from other state and federal courts. While this theory may ultimately be adopted by a higher court, I am not prepared to find the RICO statute is constitutionally valid on this new theory.

It would appear appellant is being convicted of a violation of the RICO statute by the application of differing culpable mental states. I believe the same culpable mental state should be applicable to appellant's conviction in Preble County as in Butler County. Therefore, I dissent on the second assignment of error as determined by the majority. I concur with the majority in finding the first, third, fourth, and fifth assignments of error to be without merit.