[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] OPINION
Defendant-Appellant David Owen appeals his conviction on one count of engaging in a pattern of corrupt activity in violation of R.C. § 2923.32(A)(1), advancing four assignments of error. First, Owen claims the evidence produced at trial is insufficient to support the trial court's verdict. Next, he assigns error to the trial judge's denial of his Crim.R. 29 motion for acquittal. Third, Owen contends his conviction was improper inasmuch as it rests completely on the testimony of one co-conspirator. Finally, Owen argues his conviction was against the manifest weight of the evidence.
Owen's conviction stems from his involvement in a drug trafficking enterprise operated in Miami County, Ohio, by Carl Faehl. Investigation of Faehl's enterprise began after a joint investigation of other individuals by the Miami County Sheriff's Office and the federal Drug Enforcement Agency uncovered information implicating Faehl in drug trafficking. Deputy Sheriff Paul Reece of the Miami County Sheriff's Office was the lead investigator in the case. By interviewing several of the individuals involved in the enterprise who had agreed to become cooperating sources, Reece was able to ascertain the extent of Faehl's drug dealings. While Faehl's enterprise trafficked in cocaine as well as marijuana, the trial court found, and we agree, that none of Owen's activities involving cocaine were in furtherance of Faehl's drug enterprise. Thus, we confine our recitation of the facts to that portion of the organization involving the distribution of marijuana.
From December 1995 to October 20, 1997 (hereinafter "the indictment period"), Faehl obtained hundreds of pounds of marijuana from Michael and Ruby Courtright, who procured it from Danny Ganger, a resident of the state of Texas. Typically, the Courtrights would meet Ganger in Tennessee where the exchange of money and marijuana would take place, and the Courtrights would bring the marijuana back to their residence in Troy, Ohio, where it would be stored until Faehl distributed it to others in the enterprise. After the Courtrights moved to Englewood, Ohio, in 1996, they continued to supply Faehl with marijuana in the same manner. A relative of the Courtrights moved into the house in Troy, however, and drug sales between them and Faehl continued to be conducted there as well. On two occasions, the Courtrights flew to Texas where they procured the marijuana then rented a car with which to transport it back to Ohio. As the organization became established, the Courtrights were permitted to take the marijuana more or less on credit and mail payment for it to Ganger in Texas after the marijuana had been sold in Ohio.
Each time the Courtrights met with Ganger, they purchased twenty to forty pounds of marijuana. Upon their return to Troy or Englewood, the Courtrights stored the marijuana in their garage. Faehl took five to ten pounds of marijuana at a time from the Courtrights, eventually distributing approximately ninety percent of the total shipment and permitting the Courtrights to sell the remaining marijuana to friends of theirs in Cincinnati. On occasion, Courtright would deliver the marijuana to Faehl at Faehl's house in Piqua. After receiving the marijuana from the Courtrights, whether it be at the Courtrights' house or his own, Faehl took it to Tim Jolliff's residence in Miami County, where he would weigh the marijuana and repackage it in smaller bags for sale.
Faehl had a network of individuals to whom he sold marijuana in varying quantities, Owen among them. At a trial, Angela Jolliff, ex-sister-in-law of Tim Jolliff, ex-girlfriend of Faehl, admitted drug addict, and cooperating source, testified that she recalled approximately five incidents of drug trafficking between Faehl and Owen in which Owen would purchase one pound quantities of marijuana from Faehl. She further testified that one of those occasions was on November 1, 1996. On that date, she was with Faehl when he picked up five pounds of marijuana from the Courtrights in Troy, weighed it into smaller amounts at Tim Jolliff's Miami County home, then sold it to Owen at Owen's house in Covington, Ohio. Detective Reece testified that Owen admitted to him that he sold the marijuana he bought from Faehl to support his cocaine addiction. Owen also bought marijuana in one pound quantities from Carl Kent Staten, who was one of Faehl's sources of supply for marijuana. Owen paid between $1,150 and $1,200 for each pound of mari-juana. One of the transactions took place at Owen's furniture store in Miami County, but the record does not establish the location of the other except to show that it was conducted at Owen's mother's house. Owen also made gifts of marijuana in varying quantities up to one quarter of an ounce to Mark Poling. A search of Owen's residence netted a tray with rolling papers, forceps, marijuana, a set of Ohaus scales used for weighing drugs, and papers described as "drug ledgers" which contained names of individuals and dollar figures.
On November 25, 1997, a joint indictment was issued in the Common Pleas Court of Miami County, Ohio, for twelve of the individuals involved in Faehl's drug enterprise, including Owen. All were charged with violating R.C. § 2923.32(A)(1) by engaging in a pattern of corrupt activity. Others involved in the drug trafficking ring were prosecuted in federal court.
Following a bench trial, Owen was convicted on the sole count in the indictment and sentenced to a prison term of seven years. In this timely appeal, he advances four assignments of error. Because Owen's argument in his first assignment of error is, for the most part, duplicated by that in his second, we will consider them together.
 I. The trial court erred in determining that the State proved eachand every element of the offense of engaging in a pattern ofcorrupt activity as charged against appellant David Owen.
 II. The trial court erred in failing to grant Appellant David Owen'smotion for acquittal pursuant to Ohio Criminal Rule 29.
In Owen's first assignment of error, he contends his conviction was not supported by sufficient evidence inasmuch as the State failed to prove (1) the existence of an enterprise, (2) Owen's association with the enterprise, (3) Owen's commission of "an overt act in furtherance of the conspiracy," and (4) the value of the contraband bought and/or sold by Owen exceeded five hundred dollars, as is required by the corrupt activity statute. His second assignment of error contending the trial court erroneously overruled his Crim.R. 29 motion for acquittal essentially parrots the foregoing arguments and also contends venue was not proved. For the following reasons, we find Owen's conviction is sufficiently supported by the evidence and the trial court did not err in denying his motion for acquittal.
As a prelude to our discussion, we observe that in considering a sufficiency of the evidence challenge, a reviewing court
 [E]xamine[s] the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt. The relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt.
 State v. Jenks (1991), 61 Ohio St.3d 259, paragraph two of the syllabus. Thus, the test for sufficiency of the evidence is one of adequacy. State v. Thompkins (1997), 78 Ohio St.3d 380, 386.
Further, the statutory provisions relevant to the offense for which Owen was convicted are as follows:
R.C. § 2923.32(A)(1)
 No person employed by, or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity * * *.
R.C. § 2923.31
 (C) "Enterprise" includes any individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, or group of persons associated in fact although not a legal entity. "Enterprise" includes illicit as well as licit enterprises.
 (E) "Pattern of corrupt activity" means two or more incidents of corrupt activity, whether or not there has been a prior conviction, that are related to the affairs of the same enterprise, are not isolated, and are not so closely related to each other and connected in time and place that they constitute a single event.
 (I) "Corrupt activity" means engaging in, attempting to engage in, conspiring to engage in, or soliciting, coercing, or intimidating another person to engage in any of the following:
* * *
(2) Conduct constituting any of the following:
* * *
 (c) Any violation of section * * * 2925.03
[trafficking in drugs], * * * [or] 2925.05
[funding drug or marijuana trafficking] of the Revised Code, * * * when the * * * value of the contraband or other property illegally possessed, sold, or purchased in the violation [or combination of violations] exceeds five hundred dollars.
Owen claims the State's evidence at trial failed to establish the existence of an enterprise because it was not demonstrated that there was an ongoing organization, formal or informal, that operated as a continuing unit and had an organizational structure separate and apart from the pattern of corrupt activity. Owen's argument implicitly urges us to adopt the requirements for finding an enterprise as they have developed under the federal RICO statute, citing United States v. Riccobene (C.A. 3, 1983),709 F.2d 214, and United States v. Bledsoe (C.A. 8, 1982), 674 F.2d 647.Riccobene identifies three elements that must be satisfied for finding that an enterprise exists; they are (1) an ongoing organization, (2) with associates that function as a continuing unit, (3) that has a structure separate and apart, or distinct, from the racketeering activity. Riccobene, supra at 222-23. See also Bledsoe, supra at 664 (holding "enterprise" element requires proof of a structure separate from the racketeering activity). Both of those cases relied on United States v. Turkette (1981),452 U.S. 576, 583, in which the United States Supreme Court described the government's obligation to prove both the existence of an enterprise and a pattern of corrupt activity in RICO cases as follows:
 In order to secure a conviction under RICO, the Government must prove both the existence of an "enterprise" and the connected "pattern of racketeering activity." The enterprise is an entity, for present purposes a group of persons associated together for a common purpose of engaging in a course of conduct. The pattern of racketeering activity is, on the other hand, a series of criminal acts as defined by the statute. (Cite omitted.) The former is proved by evidence of an ongoing organization, formal or informal, and by evidence that the various associates function as a continuing unit. The latter is proved by evidence of the requisite number of acts of racketeering committed by the participants in the enterprise. While the proof used to establish these separate elements may in particular cases coalesce, proof of one does not necessarily establish the other. The "enterprise" is not the "pattern of racketeering activity"; it is an entity separate and apart from the pattern of activity in which it engages. The existence of an enterprise at all times remains a separate element which must be proved by the Government.
 The Tenth District Court of Appeals of Ohio has followed Riccobene in requiring the three federal elements of an enterprise be proved for conviction. State v. Warren (Dec. 31, 1992), Franklin App. No. 92AP-603, unreported. The Court of Appeals in the Eighth District has also relied on federal interpretations of the RICO statute in holding the federal requirement that the structure of an enterprise be separate and apart from the predicate acts must be satisfied for the existence of an enterprise to be proven under the Ohio corrupt activity statute. U.S. Demolition Contracting, Inc. v. O'Rourke Constr. Co.
(1994), 94 Ohio App.3d 75, 84-85; Universal Coach, Inc. v. New York City Transit Auth., Inc.
(1993), 90 Ohio App.3d 284, 290-91. In so holding, the court noted that the Ohio statute was directly adopted from the federal RICO act.
Although the State concedes that a conviction under the Ohio corrupt activity statute requires proof on all three of the federal elements constituting an enterprise, Ohio courts have not wholeheartedly embraced that proposition. Our sister court in the Ninth District, for instance, has rejected the notion that an enterprise must possess the attribute of being distinct from the pattern of corrupt activity. State v. Wilson (1996), 113 Ohio App.3d 737,742. The court has reasoned that the legislature's broad definition of "enterprise" in R.C. § 2923.31(C) "encompasses informal, unstructured associations and even a single individual," and is incompatible with a requirement that formal structure, continuous existence, or existence separate from the criminal activity in which it engages be shown. State v. Habash (Jan. 31, 1996), Summit App. No. 17073, unreported.
This court, along with the Fifth District Court of Appeals, has resolved cases questioning the existence of an enterprise under the corrupt activity statute without reference to the federal requirements. State v. McDade (Nov. 20, 1991) Miami App. No. 90 CA 46, unreported; State v. Kinsey (Nov. 30, 1995), Holmes App. No. CA-515, unreported. Instead, we applied the facts before us to the statutory definition of "enterprise" found in R.C. § 2923.31(C) without resort to the federal elements and found that the existence of an enterprise was proved.
We note that even in the federal circuit courts, there is no unanimity as to whether the enterprise must have an existence distinct from the corrupt activity. Compare Riccobene, supra
(stating enterprise must have existence separate and apart from criminal activity); United States v. Griffin (C.A. 4, 1981),660 F.2d 996, 999 (noting that a wholly illegal entity would seem to have a discrete existence in only two dimensions; the purpose of the association and the composition of the group, and that proof of both establishes the entity's separate existence); UnitedStates v. Masters (C.A. 7, 1991), 924 F.2d 1362, 1367 (stating two elements of "enterprise" and "pattern" would collapse into one without a requirement that the they be separate and apart);Bledsoe, supra (holding enterprise must exist separate and apart from racketeering activity); Chang v. Chen (C.A. 9, 1996),80 F.3d 1293, 1298 (adopting interpretation of the RICO statute that requires organization to be an entity separate and apart from racketeering activity); United States v. Sanders (C.A. 10, 1991)928 F.2d 940, 944 (using Riccobene elements to determine existence of enterprise) with United States v. Mazzei (C.A. 2, 1983),700 F.2d 85, 89-90 (stating it does not make sense to impose a "distinctness" requirement in RICO cases); United States v.Diecidue (C.A. 5, 1979), 603 F.2d 535, 545 (rejecting contention that enterprise must be "an identifiable group with finite goals and an existence separable form the pattern of racketeering activity to which some or all of its members ultimately resort");United States v. Qaoud (C.A. 6, 1985), 777 F.2d 1105, 1115-16
(rejecting notion that a RICO conviction requires proof that the enterprise and pattern of criminal activity are distinct); andUnited States v. Cagnina (C.A. 11, 1983), 697 F.2d 915, 921
(citing Turkette as suggesting an enterprise need not have a distinct formalized structure and that proof of "enterprise' and "pattern of racketeering activity" may coalesce).
We need not resolve the dissonance between those courts that require the enterprise to exist separate and apart from the corrupt activity and those that do not because we find ample evidence in the record of the existence of an organizational structure beyond what was required for the participants to sell drugs. That the proof of the enterprise and the proof of the pattern of corrupt activity substantially overlap does not preclude a finding that Faehl's enterprise was separate and apart from the pattern of corrupt activity engaged in by Owen. The Supreme Court recognized as much in Turkette, supra.
Here, the record is replete with evidence of a fairly extensive drug trafficking operation headed by Carl Faehl. The organization purchased marijuana and cocaine, provided or arranged for its shipment to Ohio, repackaged it for sale, distributed it to various dealers, collected money from the dealers, and repeated the cycle with frequency over a lengthy period of time for the purpose of financial profit. The individuals involved in the drug trafficking were identified and their roles in the organization were established. Furthermore, Angela Jolliff and Michael Courtright both testified that Carl Faehl was the decision maker of the enterprise. He orchestrated procurement of the drugs by directing those below him in the organizational hierarchy to travel to his supplier, exchange money for drugs, and transport the drugs back to Miami County where he distributed them to his dealers. From this evidence we conclude that the trial court's finding that an enterprise existed was supported by sufficient evidence.
Owen also claims the State failed to prove he was associated with Faehl's enterprise. His argument rests in part on the credibility of the State's witnesses, which is misplaced in a sufficiency of the evidence challenge and is instead addressed under his fourth assignment of error, infra, in which he claims his conviction was against the manifest weight of the evidence. Owen summarizes the testimony of several witnesses, namely Angela Jolliff, Mike Courtright, and Mark Poling, who recalled observing little if any interaction between Owen and other members of the enterprise. In addition, he argues that Detective Reece was unable to link Owen to the enterprise's corrupt activity.
Owen mischaracterizes some of the witnesses' testimony. For example, Angela Jolliff testified that she witnessed five drug transactions between Owen and Faehl, one for five pounds of marijuana, and the other four each involving one pound of the drug. Detective Reece stated Owen admitted selling the marijuana so he could make money to maintain his cocaine habit.
Owen also ignores testimony offered by Carl Kent Staten that, while it may not provide a basis for finding a predicate act, does indicate Owen's purchase of five pounds of marijuana from Faehl, or its subsequent sale, was not an isolated incident. Staten testified that during the indictment period he sold one pound packages of marijuana to Owen on two separate occasions. From the evidence presented, viewed in a light most favorable to the State, we conclude that a rational trier of fact could find beyond a reasonable doubt that Owen was associated with Faehl's criminal enterprise.
Next, Owen claims the State failed to prove he committed "an overt act in furtherance of the conspiracy." This language appears nowhere in the corrupt activity statute. The burden placed on the State was that it prove Owen engaged in two or more incidents of corrupt activity. The trial court found Owen's five pound purchase of marijuana from Faehl constituted one incident of corrupt activity, and his subsequent trafficking of it constituted additional incidents of corrupt activity. Owen argues that these acts were not engaged in for the purpose of furthering Faehl's criminal enterprise, but rather as a consequence of his addiction to cocaine. As the trial court noted, however, Owen's argument illustrates his motive but does not exclude him from criminal liability under the corrupt activity statute. Moreover, the Ohio Supreme Court has held that a violation of R.C. § 2923.32(A)(1) is a strict liability offense, making Owen's motivation all the more irrelevant. State v. Schlosser (1997), 79 Ohio St.3d 329, 335. Based on the evidence produced at trial, we conclude that the trial court's finding that Owen engaged in two predicate acts is supported by sufficient evidence.
Owen also contends the State's evidence did not prove that the value of the drugs he bought or sold exceeded five hundred dollars. Carl Kent Staten testified, however that he sold marijuana to Owen at a price of $1,150 to $1,200 per pound. In addition, Detective Reece was told by John Weigel, another member of the enterprise, that he routinely purchased marijuana from Faehl at $1,200 to $1,250 per pound. There is no reason to think Owen's purchases were not comparable in price. The record, therefore, fully supports the trial court's finding that the value of the contraband transacted by Owen exceeded $500.
Finally, Owen claims the State never established that his drug purchases or sales took place in Miami County, Ohio. The Ohio Supreme Court has recognized that although venue is not a material element of an offense charged, it must nevertheless be proved by the prosecution. State v. Draggo (1981), 65 Ohio St.2d 88,90. Venue need not be proved in express terms, however, so long as it is established by all the facts and circumstances in the case. State v. Dickerson (1907), 77 Ohio St. 34, paragraph one of the syllabus.
Venue in Ohio is established by R.C. § 2901.12, which in relevant part states as follows:
 (H) When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred. Without limitation of the evidence that may be used to establish such course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:
 (2) The offenses were committed by the offender in his same employment, or capacity, or relationship to another.
 (3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.
 In construing the foregoing statutory provisions, Ohio courts have held that "a prosecution for engaging in a pattern of corrupt activity in violation of R.C. § 2923.32(A)(1) is properly venued in any county in which a portion of the corrupt activity occurred or in which an organization formed for the purpose of engaging in corrupt activity is based." State v. Haddix (1994), 93 Ohio App.3d 470, 479, citing State v. Giffen (1991), 62 Ohio App.3d 396, 401-2; State v. Woods (Sept 5, 1997), Hamilton App. No. C-950954, unreported; State v. Miller (Nov. 15, 1996), Montgomery App. No. 15481, unreported; State v. Sandoval (Mar. 13, 1996), Lorain App. No. 95CA006150, unreported; State v. Royce (Dec. 27, 1993), Madison App. Nos. CA92-09-023, CA92-09-024, CA92-09-025, CA 92-09-026, unreported; and State v. Pennington
(Oct. 18, 1993), Preble App. No. CA93-03-006, unreported.
Faehl's drug enterprise was formed in Miami County for the purpose of engaging in drug trafficking, which is a corrupt activity pursuant to R.C. § 2923.31(I)(2). In addition, the record contains uncontradicted evidence that Owen's purchase of five pounds of marijuana from Faehl took place at Owen's residence in Miami County. Even if Owen's subsequent sale of the marijuana took place outside the boundaries of Miami County, he did so in his same relationship with Faehl's enterprise, and in furtherance of the same purpose or objective, to wit, profiting from drug trafficking. Thus, venue in Miami County was established pursuant to R.C. § 2901.12(H).
Having found no merit to any of Owen's arguments in his first assignment of error, it is overruled. His arguments in his second assignment of error, wherein he claims the trial court erred in denying his Crim.R. 29 motion for acquittal, duplicate those articulated in his first assignment of error but for the added contention that venue was not established by the State. Before the trial court, and again here, his contention is that his Crim.R. 29 motion should have been granted because the evidence did not establish the elements discussed above. Therefore, our resolution of Owen's first assignment of error resolves all but his venue argument advanced in his second assigned error, which we have addressed, supra. Accordingly, Owen's first and second assignments of error are overruled.
 III.
The trial court erred in holding that the testimony of one co-conspirator, Angela Jolliff, was sufficient to convict Appellant David Owen.
 In his third assignment of error, Owen claims his conviction violates R.C. § 2923.03(D), which, according to him, provides that one cannot be convicted of complicity solely on the testimony of an accomplice unsupported by other evidence. We note first that Owen was not convicted of complicity, but rather engaging in a pattern of corrupt activity. More importantly, while Owen's recitation of the statute was once the law in Ohio, that all changed on September 17, 1986, when the statute was revised to read as follows:
 If an alleged accomplice of the defendant testifies against the defendant in a case in which the defendant is charged with complicity in the commission of or an attempt to commit an offense, an attempt to commit an offense, or an offense, the court, when it charges the jury, shall state substantially the following:
 "The testimony of an accomplice does not become inadmissible because of his complicity, moral turpitude, or self-interest, but the admitted or claimed complicity of a witness may affect his credibility and make his testimony subject to grave suspicion, and require that it be weighed with great caution.
 It is for you, as jurors, in the light of all the facts presented to you from the witness stand, to evaluate such testimony and to determine its quality and worth or its lack of quality and worth."
As was noted by the Supreme Court of Ohio in State v. Evans
(1992), 63 Ohio St.3d 231, 240-41, "[t]he new version of the statute, effective September 17, 1986, eliminated the need for corroboration of an accomplice's testimony, but required the court to instruct the jury about its suspect credibility." See alsoState v. McDade (Nov. 29, 1991), Miami App. No. 90-CA-46, unreported (acknowledging that revised version of R.C. § 2923.03(D) no longer prohibits convictions for complicity based upon testimony of an accomplice). We are, quite frankly, surprised at Owen's counsel's citation of the outdated statute, and urge him to use caution, any measure of which would have avoided the present mistake, when citing authority to this court in the future.
Since Owen's argument rests on law that has been obsolete since 1986, we overrule his third assignment of error.
 IV. Appellant David Owen's conviction must be reversed because it isagainst the manifest weight of the evidence.
 In his fourth and final assignment of error, Owen claims his conviction was against the manifest weight of the evidence. Before we address the merits of his argument, we note that in weight of the evidence challenges, an appellate court
 [R]eview[s] the entire record, weighs the evidence and all reasonable inferences, considers the credibility of witnesses and determines whether in resolving conflicts in the evidence, the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered. The discretionary power to grant a new trial should be exercised only in the exceptional case in which the evidence weighs heavily against the conviction.
Thompkins, supra, quoting State v. Martin (1983), 20 Ohio App.3d 172,175. Although Thompkins permits a reviewing court to consider the credibility of witnesses when addressing a weight of the evidence challenge, we nevertheless accord substantial deference to a factfinder's decision as to which testimony to credit, and to what extent to do so. State v. Lawson (Aug. 22, 1997), Montgomery App. No. 16288, unreported. Bearing this in mind, we proceed to the merits of Owen's assigned error.
Owen first argues that no witnesses testified as to the amount or value of the drugs he bought from Faehl, then sold. Angela Jolliff testified that she saw Owen buy one pound of marijuana from Faehl on four occasions, and five pounds of marijuana on one. In addition, and as we noted in our discussion of Owen's first assignment of error, both Carl Kent Staten and Detective Reece provided testimony as to the dollar value of a pound of marijuana, which was established to be in excess of $500, as is required for a conviction pursuant to the corrupt activity statute. R.C. § 2923.31(I)(2)(c). The record, therefore, fails to substantiate Owen's claim that, on this issue, the weight of the evidence weighs against his conviction.
Next, Owen claims there was no evidence that the transactions in which he engaged involved marijuana, since no one so testified nor was any laboratory analysis performed on the substance. He argues that none of the witnesses were able to definitively state that the transactions between Owen and other members of the enterprise involved marijuana. On the contrary, the record contains statements from Angela Jolliff identifying the substance involved in transactions in which Owen participated as marijuana. Owen never objected to Jolliff's identification of the substance or her qualifications to do so. Thus, we need not determine whether she possessed experience in drug use to such an extent that she qualified to be an expert witness enabling her to testify on drug identification. See State v. Maupin (1975), 42 Ohio St.2d 473,479. See also McDade, supra. Moreover, Detective Reece testified that Owen admitted purchasing five pounds of marijuana from Faehl and selling it to support his drug habit.
We have weighed all the evidence in the record and considered the credibility of the witnesses while giving substantial deference to the trial court's finding that Owen engaged in two or more predicate offenses consisting of buying and selling marijuana valued at more than $500. There is no conflict in the evidence presented by the State regarding the nature or value of the substances Owen purchased from Faehl and subsequently sold, and we are unable to conclude that the evidence weighs heavily against Owen's conviction. Owen's argument is, therefore, without merit.
Next, Owen claims Angela Jolliff's testimony was not credible given her drug abuse and cooperation with the State, allegedly in exchange for the State's promise not to prosecute her in connection with Faehl's drug enterprise. Jolliff, however, denied any deals were made with her in exchange for her testimony, as did Detective Reece. Furthermore, Reece stated that after receiving information from Jolliff, he investigated what she told him for purposes of verification and never found anything she said to be false. Moreover, Owen's conviction did not rest on Jolliff's testimony alone, as he suggests. Carl Kent Staten and Detective Reece also testified to Owen's involvement with Faehl's organization. In addition, Deputy Sheriff Robert Sweitzer of the Miami County Sheriff's Department testified as to the drug paraphernalia seized at Owen's residence. Thus, Owen's argument is not well taken.
Finally, Owen contends his conviction was against the manifest weight of the evidence because there was no showing that he committed an overt act in furtherance of the conspiracy. As we observed in our discussion of Owen's first assignment of error, this language appears nowhere in the corrupt activity statute. Owen appears to confuse the offense for which he was convicted, engaging in a pattern of corrupt activity, with conspiracy, for which he was neither convicted nor charged. Furthermore, requiring proof of an overt act, which Owen correctly describes as "an open act, done outwardly, without attempt at concealment,"State v. Papp (1980), 68 Ohio App.2d 21, paragraph one of the syllabus, would be ludicrous in the context of a drug ring, where we presume secrecy and concealment are concerns of the highest order for those involved. For these reasons, we find Owen's argument unconvincing. Owen's fourth assignment of error is overruled.
Having found Owen's assignments of error to be lacking merit, the judgment of the trial court is affirmed.
BROGAN, J. and WOLFF, J., concur.
Copies mailed to:
James D. Bennett
Jeffrey D. Slyman
Hon. Jeffrey M. Welbaum