GUICE *v.* QUA-GUICE PONTIAC, INC.

(No. 129504 — Decided June 9, 1988.)

Court of Common Pleas of Cuyahoga County.

*Coaxum & Hewitt* and *James H. Hewitt III,* for Raleigh T. Guice, Sr.
*Arter & Hadden* and *Curtis L. Isler,* for Qua-Guice Pontiac, Inc.
*Jones, Day, Reavis & Pogue* and

*Richard I. Werder, Jr.;* and *Charles R. Pinto,* for General Motors Corp.

JAMES J. MCMONAGLE, J. The issues presented herein are framed by defendant General Motors Corporation's motion to dismiss and plaintiff's first amended complaint. This memorandum deals with plaintiff's claim for relief arising under the Racketeer Influenced and Corrupt Organizations Act ("RICO"), Section 1961 *et seq.,* Title 18, U.S. Code.

Plaintiff's first amended complaint claims that his employer, Qua-Guice Pontiac, Inc. ("Qua-Guice"), has breached plaintiff's employment agreement. Testimony previously taken in the temporary restraining order hearing and as alleged in the first amended complaint demonstrates that plaintiff and defendants Stephen Qua and Gary Olin are the owners of Qua-Guice, an authorized General Motors dealership, and that plaintiff, Raleigh T. Guice, Sr., is the "dealer operator" of Qua-Guice. A "dealer operator" is required as essentially a standing contact, similar in utility to a statutory agent, in every dealer sales and service agreement between General Motors, Pontiac Division, and its dealers. Defendants Qua and Olin became financial investors in Qua-Guice approximately eighteen months after plaintiff purchased the dealership in partnership with Motors Holding Division. Qua-Guice then allegedly entered into certain agreements with plaintiff. Since that time, plaintiff claims, defendants Qua, Olin and Qua-Guice have breached those agreements and injured him in various other ways, including, among other things, by preventing him from functioning as dealer operator, making false statements about him, overstating Qua-Guice's liabilities and terminating his employment.

Plaintiff's claim against General Motors allegedly arises from the deal-

ing between him and his employer because of General Motors' contractual relationship with Qua-Guice, which is embodied in a Dealer Sales and Service Agreement ("DSSA"). Plaintiff alleges that the conduct of defendants Qua, Olin, and Qua-Guice has breached the DSSA between Qua-Guice and General Motors. General Motors is at fault, plaintiff asserts, because it has not taken adequate steps to restrain such breaches of its contract with Qua-Guice and of plaintiff's separate agreements with his employer.

Plaintiff's factual allegations against General Motors are:

1. General Motors has violated the terms of the DSSA by dealing with defendants Qua and Olin in their capacity as corporate officers of Qua-Guice and by not requiring Qua-Guice to reinstate him.

2. General Motors has not required defendants Qua, Olin and Qua-Guice to live up to an employment agreement between plaintiff and Qua-Guice and a share purchase agreement among plaintiff, Qua and Olin. General Motors is not a party to that agreement.

3. General Motors, which owns no interest in Qua-Guice, has participated in a fraud by not affording plaintiff the opportunity to purchase Qua-Guice from defendants Qua and Olin and by giving defendants Qua and Olin some undefined form of preferred treatment.

4. General Motors has reviewed the financial statements of Qua-Guice.

In Counts V, VI and VII of the first amended complaint, plaintiff alleges violations of the federal RICO statutes, Section 1961 *et seq.*, Title 18, U.S. Code. Defendant General Motors' within motion raises the threshold question of whether the court has subject matter jurisdiction over federal RICO claims. The issue appears to be one of first impression in Ohio, but the clear answer is that this court lacks such jurisdiction because RICO claims pursued under federal law are within the exclusive province of the federal courts.[1]

Congress's intention in drafting RICO legislation was to create "* * * an aggressive initiative to supplement old remedies and develop new methods for fighting crime." *Sedima, S.P.R.L.* v. *Imrex Co., Inc.* (1985), 473 U.S. 479, 498. Although the generally used objective of this legislation is to combat corruption of legitimate businesses by organized crime, the statute is being used against all individuals and corporations who have posed a threat to legitimate businesses — at one end of the spectrum, mobsters and organized criminals and their "illegitimate enterprises," and at the opposite pole, otherwise law-abiding businessmen and their "respected and legitimate enterprises." *Id.* at 499.

States have a vested interest in protecting their citizens from unlawful corruption and the general rule is that state courts do have concurrent jurisdiction over a federal cause of action. However, this can be rebutted by an "* * * explicit statutory directive by unmistakable implication from legislative history or by a clear incompatibility between state-court jurisdiction and federal interests." *Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981), 453 U.S. 473, 478.

The provision of RICO on which plaintiff relies for the existence of a civil remedy for private litigants confers jurisdiction on the federal district courts:

"Any person injured in his busi-

---

[1] There is no claim for relief under Ohio's similar, but not identical, statutes prohibiting "corrupt activity." See R.C. 2923.32 *et seq.*

ness or property by reason of a violation of section 1962 of this chapter may sue therefor *in any appropriate United States district court* and shall recover threefold the damages he sustains and the cost of the suit, including a reasonable attorney's fee." (Emphasis added.) Section 1964(c), Title 18, U.S. Code.

The RICO jurisdictional provision was drawn almost verbatim from the language of Section 15 of the Clayton Anti-Trust Act, Title 15, U.S. Code, Section 12 *et seq.,* the statute conferring jurisdiction over federal antitrust claims. See, *e.g., Blumenstock Bros. Advertising Agency* v. *Curtis Publishing Co.* (1920), 252 U.S. 436, 440.

The identity in language between Section 1964(c), Title 18, and Section 15, Title 15, U.S. Code, "* * * is not a mere happenstance; Congress consciously patterned the RICO section after the antitrust prototype." *Cook Cty.* v. *Midcon Corp.* (N.D. Ill. 1983), 574 F. Supp. 902, 912, affirmed on other grounds (C.A. 7, 1985), 773 F. 2d 892; see *Agency Holding Corp.* v. *Malley-Duff & Assoc., Inc.* (1987), 483 U.S. ___, ___, 97 L. Ed. 121, 130, 107A S. Ct. 2759, 2764. Defendant General Motors claims that the legislative history of Section 1964(c) requires the conclusion that Congress intended federal jurisdiction over RICO claims to be exclusive:

"* * * Legislators must have known that courts have construed virtually identical language as giving federal courts exclusive jurisdiction over antitrust claims. It would be anomalous for this court to hold that the jurisdictional grant in the RICO statute did anything other than create exclusive federal jurisdiction over civil claims by persons injured by violations of 18 U.S.C. § 1962." *Cook Cty.* v. *Midcon Corp., supra,* at 912. See, also, *Intel Corp.* v. *Hartford Acc. & Indemn. Co.* (N.D. Cal. 1987), 662 F. Supp. 1507, 1511; *Spence* v. *Flynt* (D. Wyo.

1986), 647 F. Supp. 1266, 1270; *Broadway* v. *San Antonio Shoe, Inc.* (S.D. Tex. 1986), 643 F. Supp. 584, 586-587; *Massey* v. *Oklahoma City* (W.D. Okla. 1986), 643 F. Supp. 81, 84; *Kinsey* v. *Nestor Exploration Ltd.-1981A* (E.D. Wash. 1985), 604 F. Supp. 1365, 1370-1371.

Our analysis of the question of jurisdiction proceeds from a well-defined doctrinal base fashioned by the United States Supreme Court in decisions stretching from the landmark case of *Claflin* v. *Houseman* (1876), 93 U.S. 130, through *Charles Dowd Box Co.* v. *Courtney* (1962), 368 U.S. 502, to *Gulf Offshore Co.* v. *Mobil Oil Corp.* (1981), 453 U.S. 473:

"The general principle of state-court jurisdiction over cases arising under federal laws is straightforward: state courts may assume subject-matter jurisdiction over a federal cause of action absent provision by Congress to the contrary or disabling incompatibility between the federal claim and state-court adjudication. * * *" *Gulf Offshore Co.* v. *Mobil Oil Corp., supra,* at 477-478. Accord, *Charles Dowd Box Co.* v. *Courtney* (1962), 368 U.S. 502, at pp. 507-508; *Claflin* v. *Houseman* (1876), 93 U.S. 130, 136. "This rule is premised on the relation between the States and the National Government within our federal system. * * * The two exercise concurrent sovereignty * * *. Federal law confers rights binding on state courts, the subject-matter jurisdiction of which is governed in the first instance by state laws. * * *" *Gulf Offshore Co., supra,* at 478; see Redish & Muench, Adjudication of Federal Causes of Action in State Court (1976), 75 Mich. L. Rev. 311, 314. Practice has followed theory. "* * * Concurrent jurisdiction has been a common phenomenon in our judicial history, and exclusive federal court jurisdiction over cases arising under federal law has been the exception rather than the rule. * * *"

*Charles Dowd Box Co., supra,* at 507-508.

Some courts have reached the opposite conclusion, *e.g., Cianci* v. *Superior Court* (1985), 40 Cal. 3d 903, 710 P. 2d 375, but the better reasoned opinions, including those of the vast majority of state courts that have addressed the issue, have adhered to the view that state courts lack concurrent jurisdiction to adjudicate civil RICO claims brought by private litigants. See, *e.g., Crowson* v. *Sealaska Corp.* (Alaska 1985), 705 P. 2d 905, 907; *Levinson* v. *American Acc. Reinsurance Group* (Del. Ch. 1985), 503 A. 2d 632, 634-635; *Maplewood Bank & Trust Co.* v. *Acorn, Inc.* (1985), 207 N.J. Super. 590, 504 A. 2d 819; *Simpson Elec. Corp.* v. *Leucadia, Inc.* (1987), 128 App. Div. 2d 339, 515 N.Y. Supp. 2d 794; *Greenview Trading Co.* v. *Hershman & Leicher, P.C.* (1985), 108 App. Div. 2d 468, 489 N.Y. Supp. 2d 502; *Main Rusk Assoc.* v. *Interior Space Constructors, Inc.* (Tex. App. 1985), 699 S.W. 2d 305, 306-307.

In addition to recognizing that the legislative history of RICO compels the conclusion that federal jurisdiction is exclusive, the courts that have rejected the assertion of concurrent jurisdiction have grounded their decisions firmly in policy considerations:

"[T]he broad purpose of RICO, namely, to aid in eliminating organized crime in the United States * * *, is best served by exclusive Federal court jurisdiction. Because RICO is designed to protect the public interest of the nation as a whole from the effects of organized crime, it is more properly the subject of enforcement by the Federal courts. To inject the State courts into the fray when interpretation of RICO has already diverged greatly in the Federal courts would only compound an extremely complex situation. * * * [T]he scope of the discordant interpretations emerging from the Federal courts is the most

vigorous argument against concurrent jurisdiction for the State courts. At this juncture, the Federal courts are in a far better position to ensure uniformity in interpretation and application of the extremely complex RICO Act * * *." *Simpson Elec. Corp.* v. *Leucadia, Inc., supra,* at 345-346, 515 N.Y. Supp. 2d at 798-799.

For these reasons, the court grants General Motors Corporation's motion to dismiss and further finds that there is no just cause for delay.

> *Defendant's motion to dismiss granted.*