**The STATE of Ohio, Appellee,**

v.

**GIFFIN, Appellant.**

[Cite as *State v. Giffin* (1991), 62 Ohio App.3d 396.]

Court of Appeals of Ohio,
Franklin County.

No. 90AP–869.

Decided April 11, 1991.

*Lee I. Fisher,* Attorney General, and *Robert F. Smith; Michael Miller,* prosecuting attorney, for appellee.

*Vivyan, Graeff & Schumacher* and *David J. Graeff,* for appellant.

BRYANT, Judge.

Defendant-appellant, Harold Giffin, appeals from a judgment of the Franklin County Court of Common Pleas finding him guilty of one count of engaging in a pattern of corrupt activity in violation of R.C. 2923.32, one count of aggravated robbery in violation of R.C. 2911.01, two counts of theft in violation of R.C. 2913.02, and four counts of aggravated burglary in violation of R.C. 2911.11.

The facts of this case are not in dispute. Defendant was convicted on eight counts of a sixty-one count indictment naming defendant along with eleven other individuals allegedly involved in an organized burglary ring spanning

sixteen counties in Ohio. The charges levied against defendant arose out of four aggravated burglaries occurring between February 1988 and February 1989; two occurred at residences in Fairfield County, one in Pickaway County, and one in Pike County. At trial, several co-defendants testified that defendant was associated with the burglary ring and a principal in these four burglaries.

In a pretrial motion to dismiss for lack of venue, defendant argued that a trial in Franklin County would violate his constitutional right to a trial in the county in which the offenses were alleged to have been committed. The trial court denied the motion and defendant was subsequently tried in Franklin County on all charges. Defendant renewed his motion to dismiss at the close of the state's case, but the trial court again denied the motion. Defendant was subsequently convicted, and appeals to this court asserting the following as error:

"(1)(A) Where no substantial activity occurs within the district the accused is tried and convicted, the trial court commits prejudicial error in overruling a pre-trial motion to dismiss for lack of venue.

"(B) Where testimony shows that the particular district in which the accused is tried and convicted was not in existence at the time of the alleged offenses, the subsequent trial of the accused is in violation of his Sixth and Fourteenth Amendments rights to the United States Constitution.

"(2) The verdict was against the manifest weight of the evidence."

In his first assignment of error, defendant contends that the trial court erred by overruling his motion to dismiss for lack of venue. Defendant submits that because none of the elements of the aggravated burglaries, aggravated robbery or theft offenses occurred in Franklin County, he cannot be tried in Franklin County on those charges. We disagree.

In *State v. Headley* (1983), 6 Ohio St.3d 475, 477, 6 OBR 526, 528, 453 N.E.2d 716, 718, the Ohio Supreme Court discussed criminal venue issues and noted:

"Although it is not a material element of the offense charged, venue is a fact which must be proved in criminal prosecutions unless it is waived by the defendant. *State v. Draggo* (1981), 65 Ohio St.2d 88, 90 [19 O.O.3d 294, 295, 418 N.E.2d 1343, 1345]. The standard of proof is beyond a reasonable doubt, although venue need not be proved in express terms so long as it is established by all the facts and circumstances in the case. *State v. Dickerson* (1907), 77 Ohio St. 34 [82 N.E. 969], paragraph one of the syllabus.

"Section 10, Article I of the Ohio Constitution fixes venue, or the proper place to try a criminal matter, as follows: ' * * * In any trial, in any court, the

party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *.' Thus, the rule is that the place of trial is to be where the offense occurred."

This rule is preserved by R.C. 2901.12, which states:

"(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed."

In the present case, none of the four aggravated burglaries, the aggravated robbery or the theft offenses were committed within the geographical boundaries of Franklin County. Nevertheless, Ohio's criminal venue statute provides for the mobile offender whose course of criminal conduct affects a number of jurisdictions. *Headley, supra.* R.C. 2901.12(H) provides in part:

"When an offender, as part of a course of criminal conduct, commits offenses in different jurisdictions, he may be tried for all of those offenses in any jurisdiction in which one of those offenses or any element of one of those offenses occurred.  * * * "

Defendant was convicted of four counts of aggravated burglary, two counts of theft, one count of aggravated robbery, and one count of engaging in a pattern of corrupt activity. Pursuant to R.C. 2901.12(H), if these offenses be a course of criminal conduct, then venue lies for all those offenses in any jurisdiction in which the defendant committed one offense or any element thereof. R.C. 2901.12(H) goes on to provide:

" * * * Without limitation on the evidence that may be used to establish such course of criminal conduct, any of the following is prima-facie evidence of a course of criminal conduct:

" * * *

"(2) The offenses were committed by the offender in his same employment, or capacity, or relationship to another.

"(3) The offenses were committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective.

" * * *

"(5) The offenses involved the same or a similar modus operandi."

The evidence before the trial court supports the conclusion that each of the offenses for which defendant was ultimately convicted was part of the same course of criminal conduct, as defined in R.C. 2901.12(H). First, the evidence at trial demonstrated that the "purpose" of the burglary ring was to maximize financial gain by creating and maintaining a loose network of career criminals willing and able to burglarize homes on relatively short notice. Defendant's

participation in the offenses in question directly furthered that purpose. Second, the offenses in question were committed by defendant pursuant to his ongoing "relationship" with the ring. Members of the ring testified that they were associated with defendant primarily through their shared interest in committing burglaries throughout central Ohio. Indeed, John Warren, a major principal in the ring, stated that he knew defendant to be a career criminal. Third, according to the undisputed testimony of several ring members, the method by which the offenses were committed hardly varied. In each case, at least three individuals were involved: one drove the car and acted as a lookout, while the others gained entry into the home by forcing open windows or doors. Once inside, the perpetrators proceeded to take anything of value, carting the stolen articles off in pillow cases.

In short, whether we consider the offenses in question to be committed by defendant in furtherance of the same purpose or objective, in the same relationship to another, or by the same or similar modus operandi, the offenses for which defendant was ultimately convicted form a course of criminal conduct under R.C. 2901.12(H).

■ Consequently, if at least one element of one of the offenses making up the course of criminal conduct was committed in Franklin County, defendant's trial was properly venued in that jurisdiction. The elements of a crime are the constituent parts of an offense which must be proved by the prosecution to sustain a conviction. Elements necessary to constitute a crime must be gathered wholly from the statute and not *aliunde. State v. Draggo* (1981), 65 Ohio St.2d 88, 91, 19 O.O.3d 294, 295, 418 N.E.2d 1343, 1346.

Applying the foregoing herein, we note that none of the four aggravated burglaries, the theft offenses, or the aggravated robbery for which defendant was convicted, nor any elements thereof, occurred in Franklin County. However, those theft offenses are the predicate offenses supporting defendant's conviction for engaging in a pattern of corrupt activity; and elements of the "pattern of corrupt activity" charge occurred in Franklin County.[1] Under R.C. 2923.32, "engaging in a pattern of corrupt activity" is defined as follows:

"(A)(1) No person employed by, *or associated with, any enterprise shall conduct or participate in, directly or indirectly, the affairs of the enterprise through a pattern of corrupt activity* or the collection of an unlawful debt." (Emphasis added.)

---

**1.** Indeed, it appears that most situations in which a criminal defendant could be charged and convicted under R.C. 2923.32 for engaging in a pattern of corrupt activity, the predicate offenses that make up that charge will form a course of criminal conduct under one of the subdivisions of R.C. 2901.12(H).

The term "enterprise" is defined broadly to include:

" * * * [A]ny individual, sole proprietorship, partnership, limited partnership, corporation, trust, union, government agency, or other legal entity, or any organization, association, *or group of persons associated in fact although not a legal entity.* 'Enterprise' includes illicit as well as licit enterprises." (Emphasis added.) R.C. 2923.31.

R.C. 2923.31 *et seq.*, Ohio's RICO statute, was patterned loosely after the Federal RICO legislation.[2] See Am.Sub.H.B. No. 5, 141 Ohio Laws, Part I, 1105; see, also, *Daniels v. True* (1988), 47 Ohio Misc.2d 8, 547 N.E.2d 425; *Guice v. Qua–Guice Pontiac, Inc.* (1988), 42 Ohio Misc.2d 9, 537 N.E.2d 259. The Ohio statute, like its federal counterpart, was designed to cast a broad net over those who conduct organized criminal activities spanning a number of jurisdictions. *State v. Thrower* (1989), 62 Ohio App.3d 359, 575 N.E.2d 863. Under federal law, substantive RICO violations are properly tried in any district where the "enterprise" conducted business. *United States v. Persico* (S.D.N.Y.1985), 621 F.Supp. 842; *United States v. Castelano* (S.D.N.Y.1985), 610 F.Supp. 1359. Drawing an analogy to conspiracy prosecutions, federal courts have found it immaterial that an individual defendant was not physically present in the district so long as it can be established that the defendant participated in an enterprise that conducted illegal activities in that district. *Id.;* see, also, *United States v. Chestnut* (C.A.2, 1976), 533 F.2d 40.[3]

Because the venue issue herein appears to be one of first impression, the federal analysis is instructive. In the instant case, testimony revealed that the hub of the burglary ring was the Columbus auction house of Tom Cummings, a major principal in the ring. Cummings personally undertook much of the planning function of the enterprise and members of the ring periodically met at the auction house to discuss the activities of the ring. In addition, Fred Woyan, a participant in the Pike County burglary, and Jimmie Waddell, a participant in one of the Fairfield County burglaries, resided in Columbus and participated in those meetings. Moreover, some of the residences actually burglarized by members of the ring were located in Franklin County. Although defendant was not directly involved in the Franklin County

---

**2.** Section 1961 *et seq.*, Title 18, U.S.Code.

**3.** In this context, criminal venue determinations under federal RICO law are governed by the provisions of Section 3237, Title 18, U.S.Code, which provides in pertinent part: "Offenses begun in one district and completed in another "(a) Except as otherwise expressly provided by enactment of Congress, any offense against the United States begun in one district and completed in another, or committed in more than one district, may be inquired of and prosecuted in any district in which such offense was begun, continued, or completed."

incidents, his association with the enterprise extends into Franklin County by virtue of these activities. Consequently, as the jury determined, defendant did engage in a pattern of corrupt activity, part of which occurred in Franklin County; and by operation of R.C. 2901.12(H), he was properly tried in Franklin County not only on that charge, but on all the charges within his course of criminal conduct, including the four aggravated burglaries, the aggravated robbery, and theft offenses at issue.

■ The trial court also held that venue could be fixed in Franklin County under the provisions of R.C. 177.03(D)(2)(a), since Franklin County was the jurisdiction with the largest population. R.C. 177.03 provides in pertinent part:

"Authority and powers of task force; notice to local law enforcement agency; action on results of investigation; special prosecutor.

"* * *

"(D)(2)(a) If a task force determines, pursuant to its investigation of organized criminal activity in a county or in two or more adjacent counties, that there is reasonable cause to believe that organized criminal activity has occurred or is occurring in the county or in any of the counties, it shall report its determination to the commission and, except as provided in division (D)(3) of this section, shall refer a copy of all of the information gathered during the course of the investigation to the prosecuting attorney who has jurisdiction over the matter and inform the prosecuting attorney that he has thirty days to decide whether he should present the information to a grand jury and that if he intends to make such a presentation, he has to give the commission written notice of that intention. If the organized criminal activity occurred or is occurring in two or more counties, the referral of the information shall be to the prosecuting attorney of the county in which the most significant portion of the activity occurred or is occurring or, if it is not possible to determine that county, the county with the largest population."

R.C. Chapter 177 entitled "Investigation of Organized Criminal Activity" provides for the creation and administration of an organized crime task force for the purpose of investigating organized criminal activity throughout the state. R.C. 177.03(D)(2)(a), cited above, outlines the task force's procedures in referring information to the prosecuting attorney. A portion of that subsection, cited by the trial court in support of its venue decision, provides the task force with a method of determining which local prosecuting authority should receive the referral when the criminal activity occurs or occurred in more than one county.

Given the foregoing, we are unable to conclude that R.C. 177.03 authorizes the courts of this state to fix venue in any jurisdiction not otherwise permitted by the general criminal venue provisions of R.C. 2901.12. R.C. 177.03(D)(2)(a) concerns only the pre-indictment referral procedures of the task force, and neither expressly nor impliedly alters or amends existing venue provisions. Although R.C. 177.03(D)(2)(a) requires the task force to make preliminary determinations concerning jurisdiction, jurisdiction and venue are not the same, as the former denotes the power of the court to hear the case and the latter denotes the situs of trial. See *State v. Loucks* (1971), 28 Ohio App.2d 77, 57 O.O.2d 160, 274 N.E.2d 773; *State v. Kushlan* (1984), 10 Ohio Misc.2d 13, 10 OBR 225, 461 N.E.2d 37. In short, the referral procedures of the task force relate only collaterally to venue; they do not provide the basis for determining venue for trial.

While the trial court should not have fixed venue in Franklin County pursuant to R.C. 177.03(D)(2)(a),[4] the error was not prejudicial since venue was otherwise proper under R.C. 2901.12(H). Defendant's first assignment of error is overruled.

In his second assignment of error, defendant contends that he cannot be convicted for the Pike County aggravated burglary and aggravated robbery without the testimony of the victim, Mr. Foster. Defendant submits that the victim's testimony is necessary to establish beyond a reasonable doubt that the entry into the residence and subsequent taking of property was nonpermissive.

Contrary to defendant's assertions, the record contains sufficient evidence to support a conviction. When Officer Jack Widdig responded to a call at the Foster residence on February 28, 1988, he found that the door to the home had been pried open, the home had been ransacked, and the owner, Mr. Foster, was highly upset. In addition, Fred Woyan, a principal in this burglary and robbery, stated that he and defendant forced their way into the Foster residence; and that a man whom he believed to be the owner was bound and gagged while he and defendant proceeded to take valuable personal property from the residence. The only reasonable inference to be drawn from this testimony is that both the entry and taking were nonpermissive. Defendant's second assignment of error is overruled.

---

**4.** The trial court also determined venue to be proper in Franklin County under R.C. 2901.12(C). Whether or not the trial court erred in applying that section under the facts of this case, cf. *State v. King* (July 18, 1989), Franklin App. No. 88AP-665, unreported, 1989 WL 83577, to the extent the trial court erred, we again find no prejudice, given our resolution of defendant's first assignment of error.

Having overruled both of defendant's assignments of error, we affirm the judgment of the trial court.

*Judgment affirmed.*

STRAUSBAUGH and HOOPER, JJ., concur.

JAMES J. HOOPER, J., retired, of the Miami County Court of Common Pleas, sitting by assignment.