[Cite as *State v. Dewalt*, 2020-Ohio-5504.]

COURT OF APPEALS
STARK COUNTY, OHIO
FIFTH APPELLATE DISTRICT

|  |  | JUDGES: |
|---|---|---|
| STATE OF OHIO | : | Hon. W. Scott Gwin, P.J. |
|  | : | Hon. John W. Wise, J. |
| Plaintiff-Appellee | : | Hon. Patricia A. Delaney, J. |
|  | : |  |
| -vs- | : |  |
|  | : | Case No. 2020CA00031 |
| ADAM KEITH DEWALT | : |  |
|  | : |  |
| Defendant-Appellant | : | OPINION |

CHARACTER OF PROCEEDING:      Criminal appeal from the Stark County
                               Court of Common Pleas, Case No. 2019-
                               CR-1507

JUDGMENT:                      Affirmed

DATE OF JUDGMENT ENTRY:        November 30, 2020

APPEARANCES:

For Plaintiff-Appellee                For Defendant-Appellant

JOHN D. FERRERO                       GEORGE URBAN
Stark County Prosecutor               116 Cleveland Avenue North
110 Central Plaza South, 5th Fl.      Suite 808
Canton, OH  44702                     Canton, OH 44702

*Gwin, P.J.*

{¶1}    Defendant-appellant Adam Keith DeWalt ["DeWalt"] appeals his convictions after a jury trial in the Stark County Court of Common Pleas.

*Facts and Procedural History*

{¶2}    DeWalt was charged by superseding Indictment filed December 12, 2019 with Felonious Assault, 3 counts in violation of R.C. 2903.11(A)(2), felonies of the first degree with Firearm Specifications pursuant to R.C. 2941.145 and with Firearm Specifications pursuant to R.C. 2941.1412, one count of Aggravated Arson, a felony of the first degree in violation of  R.C. 2909.02(A)(1), eleven counts of Improperly Discharging a Firearm at or into a Habitation, in a School Safety Zone, or with the Intent to Cause Harm or Panic to Persons in a School, in a School Building, or at a School Function or the Evacuation of a School Function, felonies of the second degree in violation of R.C. 2923.161(A)(1),with Firearm Specifications pursuant to  R.C. 2941.145  and Discharge of a Firearm on or Near Prohibited Premises, a felony of the third degree in violation of R.C. 2923.162(A)(3)(C)(2), with Firearm Specification pursuant to  R.C. 2941.145. [Docket Entry Number 47]. DeWalt's jury trial began on December 16, 2019. The following evidence was adduced during the trial.

{¶3}    On July 27, 2019 around 11:00 in the morning, Amy DeWalt was in the shower at the home she shared with her husband, Adam DeWalt on Opal Avenue in Louisville, Ohio. She heard her husband yelling and a window break. She jumped out of the shower, got dressed and her husband told her to "get some stuff and get out" because he didn't want her to get hurt.  Amy DeWalt got in her car, pulled out of the driveway and her husband came out of the garage firing a pistol in the air. Amy DeWalt drove to the

high school, a couple of blocks from the residence, and called 9-1-1. Lieutenant Chris Stillwagon of the Louisville Police Department responded to the high school, talked with Mrs. DeWalt who reported that her husband had a .45 pistol and was suicidal.

{¶4} When Lieutenant Stillwagon pulled up to the DeWalt residence on Opal Avenue, he could hear noises that sounded like gunfire and smoke coming from the front of the residence. Lieutenant Stillwagon called for backup and another Louisville Police Officer, Michael Stephey arrived. While Stephey was up at the front of the DeWalt residence, another barrage of gunfire came from the front of the residence.

{¶5} Stillwagon and Stephey took cover and called for more backup. Three more law enforcement agencies responded - the Stark County Sheriff; Canton police, and Alliance police, including two SWAT teams and armored vehicles.

{¶6} Deputy Keaton Sausman testified that she was dispatched to Louisville for an active shooter situation. Deputy Sausman was asked to block off the intersection of Hazel and Opal to stop traffic from going up or down the road. After exiting the cruiser, Deputy Sausman stated that she felt something go past her head and ducked down behind her cruiser. Deputy Sausman testified that while behind the cruiser, she heard shots hit her cruiser and stayed hidden until she was evacuated.

{¶7} Officer Zachary Taylor of the Canton Police Department testified that he responded to the active shooter call from Louisville. Officer Taylor deployed his patrol rifle and positioned himself by a tree on the north side of the 1516 Opal Street residence to contain the occupants of the home. Officer Taylor testified that he heard several shots fired that he stated were not fired at him. Officer Taylor testified that he observed the glass in the front window break, something was thrown out the window, and a fireball

erupted on the window sill. He stated that it was not until he positioned himself behind a tree that was wider than his shoulders that he heard shots fired in his direction. Officer Taylor stated that there were four shots fired at him.

{¶8} The Molotov cocktail ended up landing in the inside of the front window filling the home with smoke. DeWalt came out of the home shirtless with the pistol in his hand. He placed the pistol on the threshold of the residence and was taken into custody by the Alliance SWAT team. DeWalt was taken in a police cruiser to Mercy Medical Center for clearance for jail by Officer Steve Miller. DeWalt was given his *Miranda* warnings and body cameras recorded his statements during the five hours that his arrest was being processed. The recordings were played for the jury.

{¶9} DeWalt was recorded saying that he wanted to die and that he would plead guilty to attempted murder. He stated that he tried to throw the Molotov cocktail outside but that it ended up hitting the windowsill and bouncing back inside. If that had not ended up smoking him out, he would have shot at law enforcement officers all day long. He would have taken them out if they had not made themselves "green."

{¶10} In all, DeWalt used at least four operable firearms to shoot at law enforcement. Bullets from a Springfield Armory Model XD 45 caliber semiautomatic pistol were found behind the Stark County Sheriff's cruiser where Deputy Sheriff Keaton Sausman was taking cover. State's Exhibits 3, 4. Bullets from a .223 caliber Smith and Wesson Model M&P 15 semiautomatic rifle with a scope and bipod were found on the ground surrounding the residence and spent cartridge cases were found in the DeWalt residence. State's Exhibit 6. Spent cartridge cases from another Smith & Wesson AR-15 rifle were also found in the residence, State's Exhibit 7. Finally, shot shells from a 12

gauge Remington 870 Express Magnum pump-action shotgun were found in and around the residence, State's Exhibits 10, 11.

{¶11} A deformed jacketed hollow-point bullet was found by the pillar of the Louisville Police cruiser. DeWalt shot out of every window in the house except his bedroom.

{¶12} The home of eleven of DeWalt's neighbors were hit by the bullets. The bullets hit spouting, a front door, brick, siding. Indeed, the home of Danielle Brickwood was hit multiple time and sustained $25,000 damage. Judith Juskiw, who was at home recovering from surgery heard glass break from the bullets, fell backwards and ripped open her incision. John P. Case's family was in the backyard pool when they heard the gunshots, came in the house and heard a big bang against the back door. They recovered a bullet laying in the grass next to the deck where they were swimming.

{¶13} After hearing the evidence and receiving instructions from the trial court, the jury returned with a verdict of guilty to all the counts and specifications in the indictment.

{¶14} On December 30, 2019, the Court sentenced DeWalt to an indefinite minimum prison term of five years up to a maximum prison term of 7 1/2 years on the charge of Felonious Assault, 1 count, as contained in Count One of the superseding indictment. The 3- year Firearm Specification (R.C. 2941.145) to Count One was merged into the 7 year Firearm Specification (R.C. 2941.1412) to Count One. The sentence in Count One was ordered to be served consecutive to and subsequent to a determinate mandatory term of 7 years actual incarceration for the specification that DeWalt had a firearm. DeWalt received a 5-year prison term on the charge of Felonious Assault, 1 count as contained in Count Two of the superseding indictment.  This sentence was ordered to

be served consecutive to and subsequent to a determinate mandatory term of 7 actual years incarceration for the specification that DeWalt had a firearm. The 3-year Firearm Specification to Count Two was merged into the 7 year Firearm Specification to Count Two. DeWalt received a 5 year prison term on the charge of Felonious Assault, 1 count as contained in Count Three of the superseding indictment, with the 3 year Firearm Specification merged into the 7 year Firearm Specification in Counts One and Two, and the 7 year Firearm Specification to Count Three was merged into the 7 year Firearm Specification to Counts One and Two. DeWalt was ordered to serve a 4 year prison term on the charge of Aggravated Arson, 1 count as contained in Count Four of the superseding indictment. DeWalt received a prison term of 4 years on each count of Improperly Discharging a Firearm at or Into a Habitation, in a School Safety Zone, or With the Intent to Cause Harm or Panic to Persons in a School, in a School Building, or at a School Function or the Evacuation of a School Function, 11 counts as contained in Counts Five through Fifteen of the superseding indictment. The 3 year Firearm Specification to Counts 5 through 15 were merged into the 7 year Firearm Specification to Counts One and Two. DeWalt was ordered to serve 36 months on the charge of Discharge of a Firearm on or Near Prohibited Premises, 1 Count as contained in Count Sixteen of the superseding indictment.  The 3-year Firearm Specification to Count Sixteen was merged into the 7 year Firearm Specifications to Counts One and Two. DeWalt was ordered to serve the sentences in Counts One through Five consecutively and the sentences in Counts Six through Fifteen concurrently, for an aggregate minimum prison term of 37 years up to a maximum prison term of 39 1/2 years.

*Assignment of Error*

{¶15} DeWalt raises one Assignment of Error,

{¶16} "I. APPELLANT'S CONVICTIONS WERE AGAINST THE MANIFEST WEIGHT AND SUFFICIENCY OF THE EVIDENCE."

*Law and Analysis*

{¶17} In his sole Assignment of Error, DeWalt argues that his convictions are against the manifest weight of the evidence. DeWalt also claims there is insufficient evidence to support his convictions.

**Standard of Appellate Review– Sufficiency of the Evidence.**

{¶18} The Sixth Amendment provides: "In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury...." This right, in conjunction with the Due Process Clause, requires that each of the material elements of a crime be proved to a jury beyond a reasonable doubt. *Alleyne v. United States*, 570 U.S. __, 133 S.Ct. 2151, 2156, 186 L.Ed.2d 314 (2013); *Hurst v. Florida*, 136 S.Ct. 616, 621, 193 L.Ed.2d 504 (2016). The test for the sufficiency of the evidence involves a question of law for resolution by the appellate court. *State v. Walker*, 150 Ohio St.3d 409, 2016-Ohio-8295, 82 N.E.3d 1124, ¶30. "This naturally entails a review of the elements of the charged offense and a review of the state's evidence." *State v. Richardson*, 150 Ohio St.3d 554, 2016-Ohio-8448, 84 N.E.3d 993, ¶13.

{¶19} When reviewing the sufficiency of the evidence, an appellate court does not ask whether the evidence should be believed. *State v. Jenks*, 61 Ohio St.3d 259, 574 N.E.2d 492 (1991), paragraph two of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith, 80 Ohio St.3d 89, 102 at n.4,*

*684 N.E.2d 668 (1997*; *Walker*, at ¶30. "The relevant inquiry is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Jenks* at paragraph two of the syllabus. *State v. Poutney*, 153 Ohio St.3d 474, 2018-Ohio-22, 97 N.E.3d 478, ¶19. Thus, "on review for evidentiary sufficiency we do not second-guess the jury's credibility determinations; rather, we ask whether, 'if believed, [the evidence] would convince the average mind of the defendant's guilt beyond a reasonable doubt.'" *State v. Murphy*, 91 Ohio St.3d 516, 543, 747 N.E.2d 765 (2001), *quoting Jenks* at paragraph two of the syllabus; *Walker* at ¶31. We will not "disturb a verdict on appeal on sufficiency grounds unless 'reasonable minds could not reach the conclusion reached by the trier-of-fact.'" *State v. Ketterer*, 111 Ohio St.3d 70, 2006-Ohio-5283, 855 N.E.2d 48, ¶ 94, *quoting State v. Dennis*, 79 Ohio St.3d 421, 430, 683 N.E.2d 1096 (1997); *State v. Montgomery*, 148 Ohio St.3d 347, 2016-Ohio-5487, 71 N.E.3d 180, ¶74.

> **Issue for Appeal**: *Whether, after viewing the evidence in the light most favorable to the prosecution, the evidence, if believed, would convince the average mind of DeWalt's guilt on each element of the crimes for which he was convicted beyond a reasonable doubt.*

Felonious Assault of a peace officer.

**{¶20}** The jury convicted DeWalt of three counts of felonious assault on law enforcement officers with a firearm specification. R.C. 2903.11, felonious assault, provides in relevant part:

> (A) No person shall knowingly do either of the following:

(2) Cause or attempt to cause physical harm to another....by means of a deadly weapon or dangerous ordnance.

If the victim is a peace officer, felonious assault is a felony of the first degree.

{¶21} DeWalt argues that there was no evidence that he pointed his weapon directly at the law enforcement officers. According to DeWalt, he shot above their heads, in trees and at their cruisers when the officers were not in them.

{¶22} Simply pointing a gun at another is not enough to prove an attempt to cause physical harm. *State v. Brooks*, 44 Ohio St.3d 185, 192, 542 N.E.2d 636, 642(1989). "Something more" is required to establish intent. Verbal threats or other demonstrative evidence which are perceived by a reasonable person under the circumstances to be a threat could fulfill the requirement for additional evidence. *State v. Green*, 58 Ohio St.3d 239, 241, 569 N.E.2d 1038, 1041(1991). That threat must indicate an intention to use that weapon. Id. at 241-242, 569 N.E.2d 1038. In a somewhat analogous situation courts have found that a jury can infer intent from the defendant's actions, even though the defendant claims he lacked the requisite intent,

The trier of fact may infer an intention to kill from the surrounding circumstances where the natural and probable consequence of a defendant's actions is to produce death. *State v. Robinson* (1954), 161 Ohio St. 213, 118 N.E.2d 517, paragraph five of the syllabus; *State v. Edwards* (1985), 26 Ohio App.3d 199, 200, 499 N.E.2d 352. Here, defendant looked at a group of individuals, pointed a semi-automatic handgun in their direction, and fired five shots. In so doing, one of the bullets fired from the

handgun struck and killed his driver, Andre J. Bender. Although defendant claims the evidence equally supports a conclusion that he was merely trying to scare individuals in the group by firing the handgun into the air, "[t]he act of pointing a firearm and firing it in the direction of another human being is an act with death as a natural and probable consequence." *State v. Brown* (Feb. 29, 1996), Cuyahoga App. No. 68761, unreported. *Compare State v. Jester* (1987), 32 Ohio St.3d 147, 152, 512 N.E.2d 962 (when an inherently dangerous instrumentality is employed in the commission of a robbery, such evidence permits a jury to find a purposeful intent to kill).

*State v. Turner*, 10th Dist. No. 97APA05-709, 1997 WL 798770(Dec. 30, 1997), *quoting State v. Brown*, 8th Dist. No. 68761, 1996 WL 86627(Feb. 29, 1996) *dismissed, appeal not allowed*, 77 Ohio St.3d 1468, 673 N.E.2d 135.

{¶23} In the case at bar, Louisville police officer Michael Stephey was one of the first officers on the scene and knew DeWalt from previous encounters. When Stephey tried talking with him, instead of responding, he sent a barrage of bullets out the front of the house. When Stephey tried to run through the front yard, he could hear bullets "zinging" through the yard. DeWalt was firing at him. Officer Stephey's police cruiser was hit by two different caliber bullets.

{¶24} Canton police officer Zachary Taylor arrived and heard a barrage of shots coming from the DeWalt residence. He took cover behind a tree and heard the shots being directed towards him. When asked how he knew the shots were being fired at him, he described for the jury the sound of the shots,

So what you'll hear, you know, a bullet pass by you in close proximity, you'll hear the, the sonic boom if it's a supersonic round. So if the round is traveling past the speed of sound, you'll hear this crack as it goes by you. If they hit something, glass or they ricochet off the ground or, you know, they hit something, they'll start to tumble. And it's not kind of like the cartoonish whiz, that sound, but you'll hear — it's a distinctly different sound when they are tumbling and they pass you.

They sound completely different when they're coming at you rather than like if you're standing behind it or you're shooting a gun, or even if the gun, gun is shooting in a different direction.

1T. at 208-209.

{¶25}  Later, when Officer Taylor stood up to observe the Molotov cocktail thrown by DeWalt, he saw four rounds fired rapidly at him and he jumped from his standing position back to a prone position. 1T. at 211.

{¶26} Stark County Deputy Sheriff Keaton Sausman was parked at the intersection of Hazel and Opal Streets. She felt bullets going past her head and she ducked behind her police cruiser. 1T. at 188. Bullets were going past her head and hitting her cruiser shooting at the back tire where she was crouched down hiding.  She was pinned down by the bullets that DeWalt was firing until she was evacuated by the SWAT Team.

{¶27} Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that DeWalt caused or attempted to cause physical harm to Officer Stephey, Officer Taylor

and Deputy Sausman by means of a deadly weapon or dangerous ordnance.  We hold, therefore, that the state met its burden of production regarding the element of felonious assault, of a peace officer, three counts, and, accordingly, there was sufficient evidence to support DeWalt's convictions.

*Aggravated arson.*

{¶28}  DeWalt was charged and convicted of aggravated arson. R.C. 2909.02 aggravated arson states in relevant part: "(A) No person, by means of fire or explosion, shall knowingly do any of the following: (1) Create a substantial risk of serious physical harm to any person other than the offender." "Substantial risk" is defined as "a strong possibility, as contrasted with a remote or significant possibility, that a certain result may occur or that certain circumstances may exist." R.C. 2901.01(A)(8).

{¶29}  In the case at bar, DeWalt made a firebomb, lit the fuse of the firebomb and threw the firebomb in the direction of the law enforcement officers who were attempting to surround the home and advance toward it. DeWalt argues that the state offered no evidence that anyone was near the home when the fire from the Molotov cocktail erupted. Merely because DeWalt ineptly threw the firebomb does not negate the potential for substantial risk of physical harm.  *See, State v. Johnson,* 8th Dist. No. 81814, 2003-Ohio-4180, *rev'd on other grounds, State v. Johnson,* 104 Ohio St.3d 250, 2004-Ohio-6399, 819 N.E.2d 272("Merely because a firebomb was ineptly made does not negate the potential risk of physical harm. *See State v. Wills* (1997), 120 Ohio App.3d 320, 331, 697 N.E.2d 1072. It is the risk of physical harm that is sufficient under the statute, not whether there was actual damage.").

{¶30} By creating, lighting and launching the firebomb, DeWalt knowingly created a substantial risk of serious physical harm to any person other than the offender. Viewing the evidence in a light most favorable to the prosecution, we conclude that a reasonable person could have found beyond a reasonable doubt that DeWalt by means of fire or explosion, knowingly created a substantial risk of serious physical harm to any person other than himself. We hold, therefore, that the state met its burden of production regarding the element of aggravated arson, and, accordingly, there was sufficient evidence to support DeWalt's conviction.

*Improperly Discharging a Firearm at or Into a Habitation or in a School Safety Zone.*

{¶31} DeWalt was convicted of eleven counts of Improperly Discharging a Firearm at or Into a Habitation or in a School Safety Zone in Counts Five through Fifteen with accompanying three year Firearm Specifications to each. DeWalt argues that the state failed to offer evidence of the venue in all eleven of the counts of Improperly Discharging a Firearm at or Into a Habitation or in a School Safety Zone.

{¶32} Section 10 of Article I of the Ohio Constitution requires that: " * * * [i]n any trial, in any court, the party accused shall be allowed * * * a speedy public trial by an impartial jury of the county in which the offense is alleged to have been committed * * *. "Crim.R. 18(A) states that, "(t)he venue of a criminal case shall be as provided by law."

{¶33} "Venue is not a material element of any offense charged. The elements of the offense charged and the venue of the matter are separate and distinct. *State v. Loucks* (1971), 28 Ohio App.2d 77, 274 N.E.2d 773, and *Carbo v. United States* (C.A.9, 1963), 314 F.2d 718. Yet, in all criminal prosecutions, venue is a fact that must be proved at trial

unless waived. *State v. Nevius* (1947), 147 Ohio St. 263, 71 N.E.2d 258." *State v. Draggo* 65 Ohio St.2d 88, 90,418 N.E.2d 1343, 1345(1981).

{¶34} R.C. 2901.12 contains the statutory foundation for venue. The relevant provisions of this section read, in pertinent part, as follows:

(A) The trial of a criminal case in this state shall be held in a court having jurisdiction of the subject matter, and in the territory of which the offense or any element of the offense was committed.

{¶35} "[J]urisdiction and venue are not the same, as the former denotes the power of the court to hear the case and the latter denotes the situs of trial." *State v. Giffin*, 62 Ohio App.3d 396, 403, 575 N.E.2d 887 (10th Dist. 1991), *citing State v. Loucks*, 28 Ohio App.2d 77, 274 N.E.2d 773 (4th Dist. 1971). Proper venue insures that "the state [does not] indiscriminately [seek] a favorable location for trial or [select] a site that might be an inconvenience or disadvantage to the defendant." *State v. Meridy*, 12th Dist. No. CA2003-11-091, 2005-Ohio-241, 2005 WL 123993, ¶ 12, *quoting State v. Gentry*, 61 Ohio Misc.2d 31, 34, 573 N.E.2d 220 (1990). "Venue need not be proven in express terms; it may be established either directly or indirectly by all the facts and circumstances of the case." *State v. Jackson*, 141 Ohio St.3d 171, 2014-Ohio-3707, 23 N.E.3d 1023, ¶ 144.

{¶36} Ohio's venue statute further provides that when an offender commits offenses in different jurisdictions as part of a course of criminal conduct, venue lies for all the offenses in any jurisdiction in which the offender committed one of the offenses or any element thereof. R.C. 2901.12(H). Offenses "committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective" serve as "prima facie evidence of a course of criminal conduct." R.C. 2901.12(H)(3).

{¶37} DeWalt agrees that the state "procured testimony that the residence in which he was shooting from was located in Stark County, Ohio." [Appellant's Brief at 11]. The record does not show that venue was in another county.  DeWalt has not argued any identifiable prejudice resulted in his being tried in Stark County. The shots into the neighboring homes and properties was committed as part of the same transaction or chain of events, or in furtherance of the same purpose or objective. Further, the neighbors who testified all said that they lived in Louisville, Ohio. A map was presented which showed that Louisville is in Stark County, Ohio.

{¶38} "The venue need not be proved in express terms, where the evidence is such in the state's case that no other inference can be reasonably drawn by the jury." *State v. Dickerson*, 77 Ohio St. 34, 56, 82 N.E. 969(1907), *citing Tinney v. State*, 111 Ala. 74, 20 South 597. In the case at bar sufficient evidence was presented that Stark County was the proper venue to conduct DeWalt's jury trial.

**Standard of Appellate Review – Manifest Weight.**

{¶39} As to the weight of the evidence, the issue is whether the jury created a manifest miscarriage of justice in resolving conflicting evidence, even though the evidence of guilt was legally sufficient.  *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *superseded by constitutional amendment on other grounds as stated by State v. Smith, 80 Ohio St.3d 89, 684 N.E.2d 668, 1997–Ohio–355*; State v. Issa, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001).

"[I]n determining whether the judgment below is manifestly against

the weight of the evidence, every reasonable intendment and every

reasonable presumption must be made in favor of the judgment and the finding of facts.

\* \* \*

"If the evidence is susceptible of more than one construction, the reviewing court is bound to give it that interpretation which is consistent with the verdict and judgment, most favorable to sustaining the verdict and judgment."

*Seasons Coal Co., Inc. v. Cleveland,* 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984), fn. 3, *quoting* 5 Ohio Jurisprudence 3d, Appellate Review, Section 60, at 191–192 (1978).

{¶40}   The reviewing court must bear in mind, however, that credibility generally is an issue for the trier of fact to resolve.  *State v. Issa*, 93 Ohio St.3d 49, 67, 752 N.E.2d 904 (2001); *State v. Murphy*, 4th Dist. Ross No. 07CA2953, 2008–Ohio–1744, ¶ 31. Because the trier of fact sees and hears the witnesses and is particularly competent to decide whether, and to what extent, to credit the testimony of particular witnesses, the appellate court must afford substantial deference to its determinations of credibility. *Barberton v. Jenney,* 126 Ohio St.3d 5, 2010–Ohio–2420, 929 N.E.2d 1047, ¶ 20.  In other words, "[w]hen there exist two fairly reasonable views of the evidence or two conflicting versions of events, neither of which is unbelievable, it is not our province to choose which one we believe."  *State v. Dyke*, 7th Dist. Mahoning No. 99 CA 149, 2002– Ohio–1152, at ¶ 13, *citing State v. Gore*, 131 Ohio App.3d 197, 201, 722 N.E.2d 125(7th Dist. 1999).  Thus, an appellate court will leave the issues of weight and credibility of the evidence to the fact finder, as long as a rational basis exists in the record for its decision. *State v. Picklesimer*, 4th Dist. Pickaway No. 11CA9, 2012–Ohio–1282, ¶ 24.

{¶41} Once the reviewing court finishes its examination, an appellate court may not merely substitute its view for that of the jury, but must find that " 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *State v. Thompkins, supra*, 78 Ohio St.3d at 387, *quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717, 720–721(1st Dist. 1983). Accordingly, reversal on manifest weight grounds is reserved for "the exceptional case in which the evidence weighs heavily against the conviction." Id.

**Issue for Appellate Review**: *Whether the jury clearly lost their way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.*

{¶42} The jury as the trier of fact was free to accept or reject any and all of the evidence offered by the parties and assess the witness's credibility. "While the trier of fact may take note of the inconsistencies and resolve or discount them accordingly * * * such inconsistencies do not render defendant's conviction against the manifest weight or sufficiency of the evidence." *State v. Craig*, 10th Dist. Franklin No. 99AP–739, 1999 WL 29752 (Mar 23, 2000) *citing State v. Nivens*, 10th Dist. Franklin No. 95APA09–1236, 1996 WL 284714 (May 28, 1996). Indeed, the trier of fact need not believe all of a witness' testimony, but may accept only portions of it as true. *State v. Raver*, 10th Dist. Franklin No. 02AP–604, 2003–Ohio–958, ¶ 21, *citing State v. Antill,* 176 Ohio St. 61, 67, 197 N.E.2d 548 (1964); *State v. Burke*, 10th Dist. Franklin No. 02AP–1238, 2003–Ohio–2889, *citing State v. Caldwell,* 79 Ohio App.3d 667, 607 N.E.2d 1096 (4th Dist. 1992). Although the evidence may have been circumstantial, we note that circumstantial evidence has the same probative value as direct evidence. *State v. Jenks*, 61 Ohio St.3d 259, 272, 574

N.E.2d 492 (1991), paragraph one of the syllabus, *superseded by State constitutional amendment on other grounds as stated in State v. Smith*, 80 Ohio St.3d 89, 102 at n.4, 684 N.E.2d 668 (1997).

{¶43} In the case at bar, the jury heard the witnesses and viewed the evidence. The jury saw the witnesses and DeWalt himself subject to cross-examination. The jury heard DeWalt's attorney's arguments and explanations about the evidence and his actions. Further, the jury was able to view the events in real-time through the body cameras and pictures from the officers involved. Thus, a rational basis exists in the record for the jury's decision.

{¶44} We find that this is not an "'exceptional case in which the evidence weighs heavily against the conviction.'" *State v. Thompkins*, 78 Ohio St.3d 380, 386–387, 678 N.E.2d 541 (1997), *quoting Martin*, 20 Ohio App.3d at 175, 485 N.E.2d 717. Based upon the foregoing and the entire record in this matter we find DeWalt's convictions are not against the sufficiency or the manifest weight of the evidence. To the contrary, the jury appears to have fairly and impartially decided the matters before them. The jury heard the witnesses, evaluated the evidence, and was convinced of DeWalt's guilt. The jury neither lost their way nor created a miscarriage of justice in convicting DeWalt of the offenses.

{¶45} Finally, upon careful consideration of the record in its entirety, we find that there is substantial evidence presented which if believed, proves all the elements of the crimes for which DeWalt was convicted.

{¶46} DeWalt's sole Assignment of Error is overruled.

{¶47} The judgment of the Stark County Court of Common Pleas is affirmed.


By Gwin, P.J.,

Wise, J., and

Delaney, J., concur